THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. R. R. McCANDLISS, *as Administrator of the Estate of James St. Clair Allen, deceased.*

1. SPECIAL QUESTIONS, *Failure of Jury to Answer.* The failure of a jury to answer special questions presented to them, for the reason as expressed by them that the evidence is conflicting and they cannot answer, is generally equivalent to a finding that the facts concerning which they are asked to make findings do not exist, or are not proved.

2. ———— *Answer, Construed.* The defendant, for the purpose of obtaining a finding from the jury showing contributory negligence on the part of the plaintiff, requested the court to instruct and the court did instruct the jury to answer the special question, whether a certain railroad train was in motion at a particular time and place; and an affirmative answer to this question would have tended to show such contributory negligence; but the jury answered this question: "Evidence conflicts, and we cannot answer;" and the jury also rendered a general verdict in favor of the plaintiff and against the defendant. *Held,* That the failure of the jury to answer the special question is equivalent to a finding against the defendant, that the train was not in motion.

3. NEGLIGENCE; *Question of Fact.* Walking over a train of flat cars while the same are in motion, or even stepping from one of such cars to another while the train is in motion, is not negligence *per se.* The question of negligence in such a case is usually a question of fact for the jury, although sometimes and under some circumstances it may be a question of law for the court.

*Error from Lyon District Court.*

THE opinion states the nature of the action, and the facts. Trial at the September Term, 1883, and judgment for plaintiff for $2,000 damages. *The Railroad Company* brings the case to this court.

*A. A. Hurd, C. N. Sterry,* and *Robert Dunlap,* for plaintiff in error; *Geo. W. McCrary,* general counsel.

*Buck & Feighan,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Lyon county by R. R. McCandliss, as administrator of the estate of James St. Clair Allen, deceased, against the Atchison, Topeka & Santa Fé Railroad Company, to recover for the benefit of the next of kin of the deceased, damages for injuries alleged to have been caused by the wrongful act of the defendant. The petition alleges in substance, that on April 24, 1882, plaintiff's intestate was in the employment of the defendant as a common laborer, engaged in repairing the track of what is known as the "McPherson Branch." And while in such employment and in the line of his duties, and while being transported upon a flat car of a construction train to the place of his work, and upon arriving near that place, the train stopped, and the foreman of the work ordered the employés to get off the train to resume their labors; that the car upon which the deceased was situated was then standing upon a bridge, and he was obliged to walk a long distance over the flat cars so as to get to a place where he could get off the train in safety; "and while so getting off, and while he was in the line and faithful discharge of his duty as such laborer, and without any fault on his part, the said train of cars, without any warning given, was, through the gross negligence, carelessness, wrongful act and omission of the said defendant and its servants and agents, suddenly, violently and rapidly started, propelled and jerked forward, throwing plaintiff's intestate

down between two cars, and drawing one car over him, crushing one of his legs and otherwise injuring him," thereby causing his death. The defendant's answer was a general denial, and a statement that the injuries to the plaintiff's intestate were caused by his own negligence. The case was tried before the court and a jury, and the jury found a general verdict in favor of the plaintiff and against the defendant, and assessed the damages at $2,000; and the jury also made the following special findings, in answer to the following special questions, presented to them by the court at the request of the defendant, to wit:

"1. What was the age of Allen at the time he was killed? A. Forty-two years.

"2. How much a month was Allen earning at the time of his death?   A. $36.40.

"3. How much a month was Allen at the time of his death and prior thereto contributing to the support of his family? A. Don't know.

"4. At the time of Allen's death and prior thereto, how much a month was he contributing to the support of the other members of his family outside of himself?   A. Don't know.

"5. Deducting that portion of Allen's wages at the time of his death and prior thereto, which went to the use of himself, or for his personal benefit, how much of said wages went to the support of his wife and children?   A. Don't know.

"6. Did not Allen meet his death by falling between the ends of two flat cars which were coupled together?   A. Yes.

"7. If the jury answer the last question in the affirmative, they may state what part of Allen's body or person the car wheels ran over.   A. Right leg.

"8. How many car wheels passed over Allen's person, or any part of him?   A. One.

"9. What car wheels passed over any portion of Allen's person?   A. Front wheel of front truck.

"10. Did both of the wheels on the south side of the front truck of the car from which Allen fell pass over his person or any part of him?   A. No.

"11. If the jury answer the last question in the negative, they may state which of the two wheels on the south side of the front truck passed over any portion of Allen's person.   A. Front wheel.

"12. What was the distance from the west side of the west or front wheel on the front truck of the car Allen fell from,

which was on the south side, to the east side of the rear wheel of such front truck?   A. Seven feet one inch.

"13. What was the distance between the end of the flat car from which Allen attempted to step, at the time of his death, to the end of the other car upon which he was attempting to step, with the slack taken out between the two cars, and what was the distance between the two cars without the slack being taken out?   A. Two feet one inch, and two feet ten inches.

"14. What was the width of the flat car upon which Allen was standing at the time he met his death?   A. Nine feet.

"15. How near the center, in reference to its breadth, was Allen, on the car on which he was standing at the time he attempted to make the step which resulted in his falling?   A. Midway between brake staff and south side of car.

"16. How far apart were the rails of the track where Allen was killed?   A. Four feet eight and one-half inches.

"17. Did not Allen, at the time of his death, fall between the ends of two flat cars?   A. Yes.

"18. Had not the train upon which Allen was at the time of his death, started to move prior to the time Allen attempted to make the step, in the attempt to make which he fell?   A. Evidence conflicts, and we cannot answer.

"19. Was not the train moving upon which Allen was at the time when he attempted to make the step, in the attempt to make which he fell between the cars?   A. Yes.

"20. Is it not a fact that before Allen reached the car off from which he fell, that that car and the balance of the train was moving in the direction in which Allen was walking?   A. Evidence conflicts, and we cannot answer."

The defendant thereupon moved the court to render judgment in its favor and against the plaintiff upon the special findings of the jury, which motion the court overruled, and then rendered judgment in favor of the plaintiff and against the defendant for the amount of the damages assessed by the jury, and for costs. The defendant then brought the case to this court, and by its petition in error asks that this court shall order that judgment be rendered upon the special findings of the jury in its favor; and whether this court shall so order, or not, is the only question presented to this court.

The ground upon which it is claimed that judgment should be rendered in favor of the plaintiff in error, defendant below,

and against the defendant in error, plaintiff below, is the fact that the jury did not answer the 18th and 20th special questions presented to them for their consideration. No objection was made at the time to this failure on the part of the jury to answer these two questions. The plaintiff in error, however, now claims that the jury, by failing to answer these two questions, in effect found against the plaintiff below; found that the train had already started, and was in motion before the plaintiff's intestate attempted to make the last and final step which resulted in his death; and that he had ample notice from the movement of such train of the dangerous character of the attempt to make such step. It seems to us, however, that the logic from the jury's failure to answer these questions is against the plaintiff in error, and not in its favor. Upon the authority of the case of *Morrow v. Comm'rs of Saline Co.*, 21 Kas. 484, 504, it would seem to follow that the failure of the jury to answer these questions, would in effect be a finding that the facts concerning which they were asked to find did not exist, or were not proved. In other words, it would seem to follow that it was not proved that the train had been put in motion or was moving prior to the time when the plaintiff's intestate attempted to step from the car on which he was walking to the car in front of it; and by the 19th finding of the jury and their other findings and their general verdict, the jury in effect found that the train was then started with a sudden jerk forward, which caused the plaintiff's intestate to step between the two cars and to fall between them and to be so injured as to cause his death.

The plaintiff in error claims that the plaintiff below was guilty of contributory negligence. Now the burden of proving such negligence, if it existed, rested upon the defendant below; and the burden of obtaining a finding showing such negligence also rested upon the defendant below. But the general verdict of the jury and their special findings are against the theory or claim that the defendant was guilty of contributory negligence; and it must be so held, unless it is shown by the jury's failure to answer the 18th and 20th special ques-

tions, that the plaintiff's intestate attempted to make the fatal step after the train had started and while it was *dangerously* in motion. But as the burden of showing this rested upon the defendant below, the failure of the jury to answer the 18th and 20th special questions is in effect the same as a finding that the train was not *dangerously* in motion at the time when the plaintiff's intestate made such final step. And, indeed, such failure is equivalent to findings that the train was not in motion at all at that time; but while it must be held that upon the question of contributory negligence on the part of the plaintiff's intestate, the failure of the jury to answer the 18th and 20th special questions must be construed against the defendant, yet it is claimed by the defendant's counsel that such failure was in effect a finding that the defendant was not guilty of negligence on its part; and upon this subject counsel for the defendant — plaintiff in error — make a very ingenious and plausible argument. Their argument is substantially as follows: It devolved upon the plaintiff below to show negligence on the part of the defendant. The defendant was not negligent unless the train was moved without warning and without notice to the plaintiff's intestate. If the train was in motion while the plaintiff's intestate was walking over the car from which he fell, he had sufficient notice and warning that the train was in motion; indeed, he had actual knowledge of that fact. Hence, in order to show negligence on the part of the defendant, it devolved upon the plaintiff to show that the train was not in motion prior to making such final step, and then that it started for the first time, and from a stationary position, and thereby caused the injury complained of. And it is claimed that the jury's failure to answer these questions is in effect a finding by the jury that there was not sufficient evidence to show that the train was not in motion prior to the attempt by the plaintiff's intestate to make such final step; or, in other words, that there was not sufficient evidence to show that the train was stationary up to that time; and therefore it is claimed that no case of negligence is made out against the defendant.

On the other hand, the defendant in error, plaintiff below, answers to this argument of the plaintiff in error, defendant below, by saying that he, the plaintiff below, introduced evidence showing that it was the rule of the defendant railroad company before starting an engine or train to always ring a bell as a signal that the engine or train was about to be started; that no such signal or warning was given in the present case; that the train was not put in motion, or moving, until the plaintiff's intestate attempted to take the step which resulted in his injury; that the engineer was drunk at that time; that he then started the train with a sudden jerk from a stationary position, which caused the injury; that the general verdict of the jury was in favor of the plaintiff, which was in effect a finding in his favor and against the defendant upon all these matters, unless contradicted and overturned by some *express* special finding; and therefore it is claimed by the defendant in error, plaintiff below, that under such circumstances it devolved upon the defendant below to see that such special finding was made; but as no such special finding was made, the failure of the jury to make the same operates against the defendant below and not against the plaintiff below. There is also much plausibility in this answer of the defendant in error, plaintiff below. A general verdict is seldom overturned by inference; and as the failure to ring the bell or to give the usual signal or warning when starting a train is evidence *prima facie* of negligence, a *prima facie* case of negligence was in the first instance made out against the defendant below. But, after all, are not these special questions eighteen and twenty immaterial? Would it have made any difference even if the jury had answered them in the affirmative? The questions were not put to the jury in such a manner as to require them to find that the train was put in *dangerous* motion, or was moving at a *dangerous* rate of speed, prior to the time when the plaintiff's intestate made the final step. The questions, in order to be material, should have been so framed that an affirmative answer to them would show that the train was moving at a *dangerous* rate of speed, and one that would make

it *dangerous* for any person to step from one of the cars to another; but these were not so framed. These questions might have been answered in the affirmative, and still the train might have been moving very slowly, and only at the rate of one rod or one mile an hour.

Affirmative answers would not have shown that the train was moving at a dangerous rate of speed, or at a velocity that would have been a warning to the plaintiff's intestate not to attempt to make the step from one car to the other. For the purposes of this case, we may assume that the train was moving at a slow rate, scarcely perceptible, (and many of the witnesses testified that it was not moving at all,) and that when the plaintiff's intestate attempted to step from one car to the other it was then put in such quick and rapid motion, and by such a sudden jerk forward, as to cause the plaintiff's intestate to step between the two cars instead of upon the one in front of him, and to fall between them and to be injured as he was. It must also be remembered that in this case the foreman of the work had ordered the plaintiff's intestate, as well as others, to get off the train, and that the plaintiff's intestate was simply carrying out that order by attempting to get upon a car from which he could alight from the train with safety. And in such a case the plaintiff's intestate had a right to presume that the defendant or its servants would not render it dangerous or unsafe for him to take the only means to get off the train which seemed to be open to him. Walking over a train of flat cars while the same are in motion, or even stepping from one of such cars to another while the train is in motion, is not negligence *per se*, as all the cars in such case are moving at the same rate of speed; and as the person walking over them is carried along with them and partakes of the same motion, there is usually but very little danger in walking over them or in stepping from one car to another. But even stepping from a train of cars in motion to a stationary platform, or to the stationary ground, which is more dangerous, is not always culpably dangerous and is not negligence *per se*. ( *G. H. & S. A. Rly. Co. v. Smith,* 59 Tex. 406; *Doss v. M. K. & T. Rld. Co.,* 59

Mo. 27; *Filer v. N. Y. C. Rld. Co.*, 49 N. Y. 47; *Ga. Rld. & B. Co. v. McCurdy*, 45 Ga. 288; *Pa. Rld. Co. v. Kilgore*, 32 Pa. St. 292.) The same may be said with reference to getting on a train while it is in motion. (*Swigert v. H. & St· J. Rld. Co.*, 75 Mo. 475; *Eppendorf v. B. C. & N. Rld. Co.*, 69 N. Y. 195.)

The question of negligence in such cases is usually a question of fact for the jury, although sometimes and under some circumstances it may be a question of law for the court.

We do not think the court below erred in overruling the defendant's motion for judgment in its favor on the special findings of the jury; nor do we think that the court below erred in rendering judgment in favor of the plaintiff and against the defendant for the amount of the damages assessed by the jury, and for costs; and therefore the judgment of the court below will be affirmed.

All the Justices concurring.