FRANK WARREN, *by his next friend, W. H. Washburn,* v. THE SOUTHERN KANSAS RAILWAY COMPANY.

PERSONAL INJURY — *Negligence — Company, not Liable.* Where the plaintiff, a young man nineteen years and four months old, purchases a ticket from a railway company to ride upon a freight train five or six miles, and no one instructs him when, or where, or how to get upon the train, or what car to get upon or into, and afterward the train arrives at the station and stops with the caboose near enough and for a sufficient length of time for the plaintiff to walk to the caboose and get upon it, but he does not do so; and afterward the conductor gives a signal for the train to start and leave the station, and the plaintiff understands it, and the train then approaches the station, moving slowly, and the engine passes the place where the plaintiff is standing on the station platform, and the first car, which is a stock car with no conveniences for getting upon it except an iron ladder on its side, comes immediately in front of the plaintiff,

and the plaintiff, without waiting for the caboose car to arrive, attempts to jump upon the stock car while it is in motion, and falls between the stock car and the station platform and is injured, *held*, that the railway company is not guilty of any such negligence causing the injury as will entitle the plaintiff to recover damages therefor from the company.

## *Error from Johnson District Court.*

ACTION to recover damages for personal injuries. Trial at the March Term, 1886, and judgment for the defendant *Railway Company.* The plaintiff *Warren* brings the case here. The material facts appear in the opinion.

*John T. Little,* and *Samuel T. Seaton,* for plaintiff in error.

*Geo. R. Peck, A. A. Hurd,* and *F. R. Ogg,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Johnson county by Frank Warren, by his next friend, W. H. Washburn, against the Southern Kansas Railway Company, for personal injuries alleged to have been caused by the negligence of the railway company. The case was tried by the court and a jury; and after the plaintiff had introduced all his evidence, and rested, the defendant demurred to the evidence, upon the ground that it did not prove any cause of action; and the court sustained the demurrer, discharged the jury, and rendered judgment in favor of the defendant, and against the plaintiff, for costs; and the plaintiff, as plaintiff in error, brings the case to this court for review.

The alleged injuries were received on July 13, 1885, at about 9 o'clock in the morning, at the railway company's station, in the town of Edgerton, in Johnson county, Kansas. At the time of receiving the injuries the plaintiff was nineteen years and four months old. He had lived in the town of Edgerton for about one year, and seems to have been well acquainted there, and with the railway company's mode of business and signals. The injuries seem to have occurred in the following

manner: The plaintiff desired to go from Edgerton to Wells-
ville, a town on the company's railway about five or six miles
southwest of Edgerton. He knew that a freight train would
soon be due, and that no passenger train would be due until
about 12 o'clock. He went to the company's ticket agent at
Edgerton, William Walton, and inquired of him if the freight
train was on time, and the ticket agent answered substantially
that it was; and the plaintiff then said to the ticket agent,
"Do they carry passengers on that train yet?" and the ticket
agent answered, "They do;" and then the plaintiff said to the
ticket agent, "Well, then, Billy, give me a ticket to Wellsville;"
and the ticket agent then stamped a ticket for Wellsville, and
handed it to the plaintiff, and the plaintiff paid him therefor
sixteen cents. This was about all that was said or done at the
time. No one at any time told the plaintiff when, or how, or
where to get on the train, or what car to get on. Soon after-
ward the train came in from the northeast, and stopped, with
the engine standing at the water tank southwest of the station
platform and about 100 feet therefrom. The caboose was
about 300 or 400 feet northeast from the platform. The train
remained several minutes while taking in water, and then
backed up about 300 or 400 feet to the east end of the yard
for some switching to be done, where it remained about twenty
or thirty minutes. The plaintiff, after purchasing his ticket,
and during all the time that the engine was in taking water, and
the train backing, and the switching being done, and until the
train started to leave, stood on the southwest corner of the
station platform talking with a friend. Prior to this time the
company's freight trains sometimes stopped at Edgerton with
the caboose at the platform, and sometimes they did not.
This was all well known to the plaintiff. When the switch-
ing was all done, the conductor gave a signal for the train to
start. The plaintiff understood this signal. The train then
moved slowly in the direction of the platform, and the plain-
tiff went to the edge thereof; and when the first car, the one
immediately behind and attached to the engine, came opposite
to the place where he stood, he attempted to jump upon it,

but fell to the ground between the car and the platform, and received the injuries of which he now complains. The car was an ordinary stock car. The principal injury received by the plaintiff was the crushing of his left foot in such a manner as to require the amputation thereof, just above the ankle-joint.

Do these facts show a cause of action against the railway company? In order that the plaintiff shall recover in this action it is necessary for him to show that the defendant, through its servants or agents, was guilty of culpable negligence; that this negligence caused the injuries complained of, and that the plaintiff himself was free from all culpable, contributory negligence. Has he shown this? It is difficult to see how the railway company, by any negligence on its part, caused the injuries. We suppose it will hardly be claimed that the company was guilty of negligence in stopping its train at the water tank to take in water, and in permitting the train to remain there for a few minutes; and here we might say that there was evidence introduced on the trial tending to show that while the train was standing at that place, two other passengers for this train walked back to the caboose and got upon it in safety. We suppose it will hardly be claimed that the company was guilty of negligence in moving the train back to the east side of the yard and allowing it to remain there for some twenty or thirty minutes, and in doing some switching in the meantime. Nor will it be claimed that the company was guilty of negligence in again moving the train forward toward the station; nor can it be claimed that in this last removal of the train the company was guilty of negligence in not stopping the train with the caboose immediately in front of the station, for before the caboose had reached that point the plaintiff had attempted to jump upon the first car arriving there, and had received the injuries of which he now complains. From anything that can positively be known, the train might have stopped with the caboose immediately in front of the station, if the plaintiff had only remained where he stood on the platform ready to get upon the caboose as soon as it arrived. We

take it, however, that the principal negligence complained of is the conductor's giving a signal for the train to start, and "to leave town." The plaintiff himself testified that the conductor gave such a signal, and that he, the plaintiff, understood what it meant. The giving of this signal, however, did not cause the injuries. The injuries did not immediately flow from the giving of the signal, nor were they the natural or probable consequences thereof. The giving of the signal did not necessarily cause the plaintiff to attempt to jump upon a stock car while it was in motion, and which had no steps or other conveniences to enable persons to get upon it, except an iron ladder upon its side. Such a signal would not prevent the plaintiff from waiting where he stood on the platform until the caboose got to the point where he was standing, nor would it prevent him from attempting to get upon the caboose instead of upon the stock car; or, if that was dangerous, it would not prevent him from remaining at the station until the next train arrived, some three hours later. He knew when he bought his ticket that freight trains did not always or generally stop with the caboose immediately in front of the station, and undoubtedly he knew that it was not proper for him to attempt to get upon a stock car while in motion, or to ride upon or in any car of a freight train except the caboose. The entire negligence complained of, however, is the foregoing signal, coupled with the failure of the railway company through its agents and servants to instruct the plaintiff when and where and how to get upon the train, and upon what or into which car to get. We do not think that the railway company is required to give any such instructions, and especially not to a young man in his twentieth year, strong and healthy and ordinarily intelligent, and one who knew as much as the plaintiff did concerning the railroad business at that particular place. Under the circumstances, we do not think it devolved upon "Billy" Walton, the ticket agent, or upon any other one of the company's agents or servants to instruct the plaintiff how to take care of himself. He well knew that it was not the custom for passengers intending to ride upon a railroad

train, even upon a freight train, to attempt to jump upon a stock car while in motion, or in any case to ride upon or in a stock car.   If the railway company did not furnish sufficient facilities to the plaintiff for him to get upon the caboose, and even if it would not have done so if he had waited for the caboose to arrive at the platform where he was standing, then his remedy was to let that train pass without attempting to get upon it, and to sue the company for damages.

It is probably unnecessary to say anything with regard to the plaintiff's contributory negligence.   Generally, it is not *per se* negligence for a person to get on or off a railroad train in the ordinary manner, and as people sometimes do, while the train is only slightly in motion. (*A. T. & S. F. Rld. Co. v. McCandless*, 33 Kas. 373, 374, and cases there cited.)   But to attempt to get upon a train in the extraordinary manner in which the plaintiff attempted to get upon the train in this case, would seem to be *per se* culpable negligence. (*Harvey v. Eastern Rld. Co.*, 116 Mass. 269; *Rld. Co. v. Le Gierse*, 51 Tex. 189.)

*Personal injuries; culpable negligence of plaintiff.*

The judgment of the court will be affirmed.

All the Justices concurring.