The Southern Kansas Railway Company v. John Sanford.

1. Carrier — *Ejection of Trespasser.* Removing a trespasser from a train of cars while the train is in motion, when the train is moving very slowly, is not negligence or wantonness *per se.*

2. Negligence — *Question for Jury.* In cases of ejection of trespassers from trains in motion, the question of negligence or wantonness is usually a question of fact for the jury.

*Error from Johnson District Court.*

The opinion states the case.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*A. Smith Devenney,* for defendant in error.

Opinion by Strang, C.: This action was brought by the defendant in error against the plaintiff in error to recover damages for an injury, which he alleges was inflicted upon him by the agent of the plaintiff in ejecting him from its train of cars, on October 11, 1887. The defendant was a passenger on the plaintiff's train from Kansas City west, on the evening of that day. When the conductor in charge of the train demanded his ticket he did not produce any, and refused to pay fare, and was put off the train. At some time, either while being put off the train, or after he was off, his ankle was sprained, and this action was brought to recover damages therefor. At the January term, 1888, the case was tried by the court and a jury, and a verdict for the plaintiff therein returned for $150 — $100 compensatory damages, and $50 as punitive damages. Motion for new trial was overruled.

The undisputed evidence in this case clearly shows that the defendant twice failed to produce a ticket when it was demanded by the conductor, once before reaching the station at Argentine, and again before reaching Holliday. And each

time he not only refused to surrender his ticket, but refused to tell where he was going, simply saying in response to the inquiry of the conductor as to where he was going, "I guess I know where I am going." The first time he refused to surrender his ticket or tell where he was going, the conductor directed him to get off the train at the next station, Argentine, which he failed to do. The defendant thus ceased to be a passenger on the plaintiff's train and became a trespasser thereon, and especially so, after he had the second time refused to surrender his ticket, or tell where he was going, so the conductor could fix the amount of his fare, and the conductor had a right to put him off, at a station, or between stations, only so he did not put him off at a dangerous place nor use any more force than was necessary to eject him, nor put him off with a wanton disregard of the consequences of his ejectment. (64 Mo. 464; 48 Ind. 90; 47 Iowa, 82; 15 N. Y. 456; 37 Mich. 342; 38 Kas. 621, and cases there cited.)

Was the defendant ejected at a dangerous place? This question must be answered in the negative. He was put off near the station, in sight of the depot, where the ground was level and smooth, he himself testifying, "I had pretty good footing from there on; I could see all before me. Pretty good road where I came." That is, it was a pretty good road from the place where he was put off to the depot. There is nothing in the record that shows that the conductor assaulted the defendant, or used violence, or any more force than was sufficient to eject him. The evidence shows there was very little resistance. The defendant was led, or pushed out of the car, and put off of the platform on to the ground without much fuss or force.

We think the evidence clearly shows that the defendant was, at the time, just enough under the influence of liquor to make him somewhat stupid when left to himself, and more or less contrary when aroused; unable to offer much resistance, and certainly not able to remember afterward much about what transpired.

Was the conductor guilty of negligence or wantonness in

putting the defendant in error off, under all the circumstances of this case? A strong preponderance of the evidence shows that the train was standing still when the defendant in error was put off. The conductor says the train was standing still. The defendant in error also says it had stopped when he was put off. It is true that he says, in answer to a leading question in his examination-in-chief, it was moving. But having testified both ways, his evidence must be taken more strongly against himself. And under ordinary circumstances, his evidence against himself would outweigh the evidence of a mere witness in his behalf, contradicting him on this point. All the witnesses agree that the train stopped outside the switch, to allow the brakeman to turn the switch, and again after it had run in on the switch, to let the brakeman get on. And it must be remembered that this stop was within two hundred or three hundred yards of the depot, where the train must stop again. Mr. Hodges, a passenger on the train, says the train was in motion when the defendant in error was put off. He says the train had stopped inside the switch. But he says it had started up again before the defendant in error was put off. He also says that the first thing he saw in connection with the ejectment of the defendant in error was the conductor setting down his lantern and pulling the bell-rope to stop the train; that immediately thereafter he went out upon the platform at the rear end of the car to see what the train was stopping for; and while there he heard a noise inside as though made by a shuffling of feet, and went into the car, and as he went in the conductor and the defendant in error were going out of the front end of the car, and that he did not see or hear anything further. He did not go out again, but says the train was in motion. The evidence also shows that the conductor stepped from the platform to the ground with the defendant in error. Under such a state of facts the ordinary mind would not long hesitate in reaching the conclusion that the train was standing still when the defendant in error was ejected; that he was put off after the train had run in on the switch and stopped, and before it had again started. It is hardly within

reason to believe that having stopped outside of the switch, where the conductor says he would not put the defendant in error off because it was not a good place, and then having run in on the switch and stopped, where it was a good place to put him off, that he waited until after his train had started to run up to the depot not three hundred yards away, and then pulled the bell-rope and slowed his train up and put him off. Under such circumstances, it is much more in consonance with reason to believe that Hodges was mistaken about the train being in motion when the ejection occurred, especially as he is directly contradicted on this point by the conductor and the defendant in error himself; and that the train was in fact standing still when the defendant in error was ejected.

But counsel for defendant in error reminds us that the jury found for the defendant in error, and that, with no special finding in the case, the general verdict is conclusive upon all questions upon which there was a conflict in the evidence. We concede this, though reluctantly under the evidence in this case, and are therefore confronted with the question, Was it negligence or wantonness *per se* for the conductor to put the defendant in error off from the train while it was in motion? As there is no finding of the jury, as to how fast or how slow the train was moving when the ejection was made, we must, to sustain the verdict and judgment in this case, say that it is negligence or wantonness *per se* for a conductor to remove a trespasser from a train in motion, no matter how slow it is running. In the case of *A. T. & S. F. Rld. Co. v. McCandliss,* 33 Kas. 366, 373, 374, this court held that "stepping from a train of cars in motion to a stationary platform,

1. Carrier— ejection of trespasser.

or to the stationary ground, which is more dangerous, is not negligence *per se,*" and cited in support of that position *G. H. & S. A. Rld. Co. v. Smith,* 59 Tex. 406; *Doss v. M. K. & T. Rld. Co.,* 59 Mo. 27; *Filer v. N. Y. C. Rld. Co.,* 49 N. Y. 42; *Banking Co. v. McCurdy* 45 Ga. 288; *Pa. Rld. Co. v. Kilgore,* 52 Pa. St. 292. The court also said in that case, that "the same rule obtained in getting on a train while in motion," and cited *Swigert v. H. &*

*St. J. Rld. Co.*, 75 Mo. 475, and *Eppendorf v. B. C. & N. Rld. Co.*, 69 N. Y. 195. It is held in that case that the question of negligence, in such cases, is usually a question of fact for the jury, although sometimes and under some circumstances it may be a question of law for the court. So, where a trespasser is removed from a train of cars by the agents of the company operating the train while a train is in motion, we think the question of negligence, of wantonness, of the amount of force used, and of the character of the place where the ejection took place, are usually questions of fact for the jury. Where the evidence shows that the train, at the time of the ejectment, is moving very slowly, it is not negligence or wantonness *per se* to put a trespasser off of the train. In this case, the plaintiff below could not have recovered, except upon the theory that it was negligence, or wantonness *per se* for the conductor to put him off of the train while it was in motion. It is difficult to say whether or not the court intended to instruct the jury that it is negligence or wantonness *per se* to remove a trespasser from a train of cars while in motion, because of the fact that the court coupled so many other conditions with the element of motion of the train in its charge. But we have no doubt the jury were led by the charge to believe that the plaintiff below had a right to recover if he was put off of the train while it was in motion, without regard to the rate of its speed. This is apparent from the verdict, since the evidence clearly shows that there was no other element of negligence or wantonness in the case, and to that extent we think the instructions misleading and erroneous.

We also think some of the instructions refused should have been given; they stated the law correctly, and the matter was not covered properly by the instructions that were given. If it ever is a question of fact for a jury to say whether it is a wanton wrong to put a trespasser off of a train while in motion, then this case is such a one, for the evidence clearly shows that the train was moving very slowly, if moving at all, while the ejection occurred. The court should have submitted it as

*2. Negligence— question for jury.*

a question of fact, coupled with proper instructions in relation thereto, for the jury to say, if they should find the train was in motion when the defendant in error was removed therefrom, whether or not the train was moving at such a rate of speed as to render the removal dangerous.

For the reasons herein given, it is recommended that the judgment of the district court be reversed, and the case remanded for a new trial.

By the Court: It is so ordered.

All the Justices concurring.