THE ATCHISON TOPEKA & SANTA FÉ RAILROAD COMPANY V. A. B. CALVERT.

1. INJURY *to Child on Track—Negligence of Mother— Question for Jury.*
   The plaintiff's little child, two years old, escaped from its home and
   wandered on the railroad track, distant only about 40 feet therefrom.
   In from three to five minutes thereafter, it was run over and injured
   by a train of defendant's cars. The mother, at the time the child left
   the house, was busy ironing. She did not perceive that the child was
   on the track and the train approaching, until it was too late for her
   to rescue it. The door of the house was open, and there was no fence
   sufficient to prevent the child from going on the track. *Held,* That
   it was for the jury rather than the court to determine from these
   facts and circumstances whether the mother was guilty of negli-
   gence.

2. INSTRUCTIONS—*Lack of Logical Arrangement.* The want of orderly
   and logical arrangement of the propositions of law involved in the
   charge of the court to the jury will not entitle the defeated party to
   a reversal of the judgment, where all of the propositions of law
   fairly applicable to the case are given by the court, in such manner
   as to fairly inform the jury of the rules and principles by which
   they are to be guided in forming their verdict.

*Error from Sedgwick Court of Common Pleas.*

SUIT was brought in the court of common pleas of Sedg-
wick county by *A. B. Calvert,* as plaintiff, to recover for loss
of services and expenses incurred on account of an injury re-
ceived by his little daughter. The accident happened on the
railroad track, in Orme street, Wichita. Plaintiff resided
with his family in a house about 40 feet distant from the
track. At the time of the accident the plaintiff was away
from his home. His wife was at home with their children,
attending to her household duties. Just before the accident
happened she was busy ironing. A neighbor, Mrs. Le Port,
was visiting her. The little child went out of the house with
Mrs. Le Port's little girl a very short time before the acci-
dent—the jury say from three to five minutes. The child was
on the track, nearly in front of the plaintiff's house, when
the train of cars belonging to the defendant ran over it, cut-

ting off one of its legs. The jury rendered a general verdict in favor of plaintiff for $800, and answered special questions, as follows:

"1. How far west of the west line of Emporia avenue was the child when the accident happened? A. About 70 feet.

"2. How far from the plaintiff's house was the railroad track on which the accident happened? A. About 40 feet.

"3. Is it not a fact that just east of Emporia avenue the south arm of the 'Y' in question curved to the south and extended south of Orme street? A. Yes.

"4. About how many minutes before the accident did the child leave the house? A. Three to five minutes.

"5. Where was the child's mother when it left the house? A. In middle room of house.

"6. State fully what there was, if anything, to prevent the child from escaping from the house and going upon the railroad track, if not watched by its mother. A. Nothing.

"7. Was any bell rung or whistle sounded as the engine and car approached the child? A. No.

"8. Is it not a fact that the accident in question happened on the track of the Wichita & Western Railroad Company? A. Ownership not disclosed by evidence.

"9. If you answer 'No' to the next to the last question, state whether the ringing of the bell or the blowing of the whistle as the engine approached the child would have caused it to appreciate its danger and get off the track in time to avoid the injury. A. No.

"10. If you answer 'No' to question No. 7, state if the ringing of the bell or the blowing of the whistle would have given notice to the mother that the child on the track was in danger in time for her to save it from the accident. A. Yes, if rung or blown at proper time.

"11. State what, if anything, you find from the evidence the engineer and fireman on the engine failed to do, which a man of ordinary skill and prudence would have done toward saving the child, after they discovered the child was on the track. A. No evidence to show they discovered child.

"12. What was the greatest rate of speed attained by the switch engine in approaching the point where the child was injured just prior to the injury? A. About five miles per hour.

"13. How long had the child been on the track when the injury occurred? A. No evidence to show how long."

"27. Did the mother of the child do anything to prevent the child from going on the track prior to the injury? A. No."

Among others, the court gave to the jury the following instructions:

"1. That before the plaintiff can recover in this case, he must show by a preponderance of the evidence that, at the time and place charged in his petition, the defendant corporation, by its servants and employés, did so negligently and carelessly run and operate its engines and cars as to cause the injury therein charged upon the child, Goldie Myrtle Calvert; and they must further find, that the parents of said child were not guilty of negligence in permitting said child to escape and go upon the railroad track. And you are further instructed, that the said Goldie Myrtle Calvert, on account of her age at the time of said accident, could not be guilty of contributory negligence.

"2. You are further instructed, that the question of negligence of the parents of Goldie Myrtle Calvert is one entirely for the consideration of the jury; and, although you may find from the evidence that at the time of the accident the father, the plaintiff, was from home attending to his ordinary duties, and that his wife, the mother of said child, was at home in charge of said child, attending to her household duties, and that said child, without her observation, escaped from the house a short time prior to the accident and wandered upon the railroad track in question, where the accident occurred, yet these facts and circumstances are not conclusive evidence of the negligence of said parents.

"3. If you believe, from all the evidence in the case, that the parents of said child, or either of them, immediately prior to said accident did exercise that degree of caution and watchfulness over said child which was reasonable and proper for one of their circumstances, they were not guilty of contributory negligence.

"4. With reference to the negligence which may or may not be imputed to the defendant under the facts of this case, I instruct you that the degree of care which the defendant would be required to exercise in switching and moving its cars depends largely upon the place where such cars were being moved and its surroundings; what might be reasonable care in an unfrequented place and sparsely settled community, might be considered negligence in a populous neighborhood

or city, where children and other persons often go upon the track.

"5. You are further instructed, that if you find from the evidence that the defendant corporation, by its servants and employés in charge of and in control of the engine and cars in question, switching and moving the same on said track where the accident occurred, were in a position whereby, exercising ordinary care, it could have seen the child and have avoided the accident, but failed to exercise such care, the defendant is guilty of negligence, and the jury should find for the plaintiff, and assess such damages as under the evidence they may think he is entitled to, not to exceed the amount claimed in plaintiff's petition, and during the minority of said child, viz., 18 years."

"11. You are instructed that negligence cannot be presumed from the fact that the child was injured, and are further instructed, that the plaintiff must show, before he can recover in this action, that the defendant was guilty of some act or of some omission to perform some act which men of ordinary skill and prudence in operating switch engines under like circumstances would have done, and that such omission to perform such acts directly contributed to or caused the injury to the child.

"12. You are instructed that parents of children of tender age are their legal custodians, and the public have a right to presume that they will use ordinary care to prevent injury to such children; and if the parents, or either of them, fail to use the care required of them to prevent injury to such children, neither of the parents can recover by reason of such injury.

"13. You are instructed that the defendant has the right to presume that children will not play upon the track, or get in front of its trains in a position of danger, and has a right to presume that the parents of children will not permit such children to go upon or about railroad tracks unattended by persons competent to take care of such children.

"14. You are instructed that if you find from the evidence that the parents of the child in question, or either of them, was guilty of negligence by reason of which the child got upon the track in a position of danger, then you are instructed that the plaintiff cannot recover in this action."

"17. The jury are instructed that the burden of proof is with the plaintiff to show that the child got upon the railroad track without any fault or negligence on their part, if

you find it was on the track unattended by a person competent to take care of it.

"18. You are further instructed, that parents are bound to take proper care of a child, so as to guard it against being run over on railroads or railroad crossings, or from allowing their children to go into dangerous places, and it is gross carelessness on the part of parents to allow their children to stray at large and in dangerous places; and if parents permit their children to go at large and in or about dangerous places attended by an attendant, the attendant must be of a suitable age to properly care for the child.

"19. You are further instructed, that the plaintiff must prove his case by a preponderence of the evidence. If the evidence is equally balanced, you will find for the defendant."

Plaintiff had judgment on the verdict, and the defendant company brings the case to this court.

*A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*J. R. Shields,* and *Amidon & Conly,* for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: It is contended on behalf of the plaintiff in error that the evidence fails to show culpable negligence on the part of the trainmen, and that it does show contributory negligence on the part of the child's mother. It appears from the testimony that the train was moving west, the engine backing, fronting toward the cars it was pulling, and pushing the tender ahead of it. The engineer was in the cab, facing the east. No careful lookout appears to have been kept by the engineer or fireman to see that the track was clear, and neither the bell nor whistle was sounded to give warning of danger. The child's mother did not know that the train was approaching in time to reach the child, though she started toward it just before the accident happened. The jury find that the ringing of the bell or the sounding of the whistle would not have caused the child to have appreciated its danger, but that if done in time it would have warned the mother in time for her to have saved it from injury. We think there

is evidence in the record to support the finding of the jury of negligence on the part of the trainmen.

Do the facts stated show negligence on the part of the mother? It is insisted that persons having little children and living in close proximity to a railroad must at their peril keep them from straying on the track, and that a mother, living within 40 feet of a railroad track, who permits a little two-year-old child to wander out of the house, as this one did, and stray upon the track, is guilty of such culpable negligence as precludes a recovery in an action brought by the father. It would be exceedingly difficult to lay down a strict rule of law defining the degree of care which is incumbent on parents living near the line of a railroad in guarding their children from injury. We know it to be a fact that in cities and densely peopled localities many people do dwell very near to railroad tracks where trains frequently pass, others at a little greater distance, and so on in numberless gradations of proximity. Can we declare, as a matter of law, that any person who, either from choice or necessity, lives in a house immediately adjacent to railroad grounds must at his peril keep his children fenced or guarded from entering on the track? And if we may, at what distance from the road may the fences or guards be omitted, and children be given some measure of freedom of action? May we say that people who, by reason of their poverty, select unfavorable locations, where they are exposed to danger, who are unable to provide themselves with more than a rude shelter, and who are forced to labor for their daily bread, must still at their peril build such a fence or such a wall as will effectually confine their children, or else neglect their work to constantly attend them? We do not think any rigid rule of law can be declared applicable to such cases. It is a question of fact, to be determined in each case by the jury, whether or not the parents have been guilty of negligence. Doubtless cases can be imagined where a court might say, as a matter of law, that there was negligence on the part of the parents, but we do not think

1. Injury to child on track —negligence of mother— question for jury.

this such a case. In this conclusion we but reaffirm the rule followed by this court in the case of *Smith v. Railroad Co.*, 25 Kas. 738.

More difficult questions arise on the instructions. The criticism on the second instruction is, that the court, after stating that the question of negligence of the parents is one entirely for the consideration of the jury, then proceeds to state that certain facts and circumstances are not conclusive evidence of the negligence of the parents, thereby invading the province of the jury, as declared in the first part of the instruction. In the case of *Railway Co. v. Pointer*, 14 Kas. 37, it was held, that

"Where the facts are disputed, negligence is a question of fact for the jury; where the facts are undisputed and but one deduction is to be drawn from them, it presents a question of law for the courts; but where the facts are undisputed, but are of such a nature that different minds will draw different conclusions from them as to the reasonableness and care of a party's conduct, it is a proper question for the determination of a jury."

The rule as declared in this case has been adhered to in all subsequent cases. (*Railroad Co. v. McCandliss*, 33 Kas. 366; *Railroad Co. v. Fitzsimmons*, 22 id. 686; *Railroad Co. v. Smith*, 28 id. 541.) It would have been better for the court below to have omitted any comment on the facts of the case; but as this court has often declared as a matter of law that a given state of facts, concerning which there was no dispute, did or did not constitute negligence, and as the proposition advanced by the court is correct in and of itself, no substantial error was committed by the court in this particular. The most that can be said against it is, that the fact that the child escaped from the house and wandered upon the track while the mother, who was at home in charge of the child, was attending to her household duties, was a circumstance which the jury had a right to consider in determining whether she was guilty of negligence. Had these been the only facts showing negligence, the court by this instruction would not

have decided the question of contributory negligence for the jury, for the instruction merely declares that these facts and circumstances are not conclusive evidence of negligence; that is, that any presumption of negligence arising therefrom might be rebutted by other evidence in the case. There were various other facts and circumstances shown which it was the duty of the jury to consider in deciding this question, such as the absence of any fences or other barrier to prevent such a little child from wandering on the track, the frequency of passing trains, the age, strength and intelligence of the injured child, the presence of other children, etc. As other portions of the instructions referred in language very favorable to the defendant to some of these things, it cannot be presumed that the jury was unduly influenced by these remarks from the court.

The fourth instruction is criticised as being inapplicable to the facts in the case. It is contended that the evidence does not show that the place where the accident occurred was a populous locality. We see no valid objections to the language used. It enunciated a sound proposition, and the jury were left entirely free to determine the facts in that particular from the evidence.

The fifth instruction, standing alone, is erroneous, because it fails to state that the plaintiff could not recover if guilty of contributory negligence. In this instruction, the rule with reference to the liability of the railroad company for the negligence of its employés is fairly stated, and the jury are then told that, if they find that the injury was caused by such negligence, they should find for the plaintiff and assess his damages. The court should in the same connection have spoken of the effect of contributory negligence on the part of the child's parents. Its failure to do so was substantial error, unless cured by the instructions that followed.

In the twelfth instruction the court said:

"You are instructed that parents of children of tender age are their legal custodians, and the public have a right to presume that they will use ordinary care to prevent injury to

such children, and if the parents, or either of them, fail to use the care required of them to prevent injury to such children, neither of the parents can recover by reason of such injury."

In the fourteenth instruction:

"You are instructed that if you find from the evidence that the parents of the child in question, or either of them, was guilty of negligence, by reason of which the child got upon the track in a position of danger, then you are instructed that the plaintiff cannot recover in this action."

These instructions are clear and pointed. They challenged the attention of the jury directly to the question of negligence on the part of the parents of the child, and explicitly told them that if either one was guilty of negligence the plaintiff could not recover; and in the eighteenth instruction the court further said:

"You are instructed that parents are bound to take proper care of a child, so as to guard it against being run over on railroad or railroad crossings, or from allowing their children to go into dangerous places, and it is gross carelessness on the part of parents to allow their children to stray at large in dangerous places; and if parents permit their children to go at large and in and about dangerous places attended by an attendant the attendant must be of a suitable age to properly care for the child."

This last instruction is certainly quite as strong as the defendant was entitled to on the point covered. Can it be said that a jury, acting as reasonable, sensible men, could have been misled by the mere failure of the court to mention contributory negligence in the fifth instruction, when their attention was thereafter repeatedly directed by the court to the rule which precluded recovery by the plaintiff, if guilty of such negligence? To so hold is to hold that the jury were wanting in common understanding, and were liable, merely because of a lack of strictly regular and orderly arrangement of the matters included within the court's charge, to wholly ignore that portion of it favorable to the defendant, and which was so fully and forcibly stated. No rule is better settled than that the whole

2. Instructions— lack of logical arrangement.

charge must be construed together. The mere fact that some juror might possibly have misconstrued one portion of the instructions ought not of itself to be sufficient ground for a reversal, for that may happen in many cases. Language has its imperfections, and jurors have imperfections of understanding. Errors and imperfections necessarily attend all human operations, in court as well as elsewhere. If the jury can be said to have been given to fairly understand all of the rules of law applicable to the case, and not to have been given any erroneous rules, the judgment should be affirmed. If a slight error, afterward fully and fairly corrected, was made, the judgment should not for that reason be reversed, unless it appears from the whole case that the jury were misled by such error. This, it seems to me, does not appear to have occurred in this case.

No complaint is made of the verdict as having been excessive, and we think all the findings of fact are fairly sustained by the evidence in the case.

Complaint is made of the refusal of the court to give the following instruction:

"The jury are instructed that if you find from the evidence that the ringing of the bell or the blowing of the whistle, while the engine was traveling towards the child, and on Orme street, would not have prevented the injury, then the failure to ring the bell or blow the whistle would not be such negligence on the part of the railroad company as directly contributed to the injury."

If it be conceded that this instruction embodies a correct proposition of law, the answer of the jury to the tenth question shows that it would have been unavailing to the defendant in error. They there find that it would have given notice to the mother in time for her to save the child from accident, if rung or blown at the proper time.

The fourteenth instruction is not a correct statement of the law, and was rightly refused. The twenty-fourth instruction asked by the defendant is not so strong on the proposition it covers as the eighteenth given by the court. The twenty-fifth

is substantially included in the instructions given, and the twenty-ninth does not correctly state the law. As there is little conflict in the evidence, and all of the facts disclosed seem to fairly sustain the verdict, we think no such substantial errors are presented as warrant this court in reversing the judgment. It is therefore affirmed.

JOHNSTON, J., concurring.

HORTON, C. J., dissenting upon the finding of the jury: In my opinion, the twenty-seventh finding of the jury, that "the mother of the child did not do anything to prevent the child from going on the track prior to the injury," must be limited in its terms, as returned; otherwise, it is in conflict with the verdict.