THE KANSAS CITY, FORT SCOTT & MEMPHIS RAIL-
ROAD COMPANY v. JAMES CAMPBELL *as Adminis-
trator*.

No. 168.

DEMURRER TO EVIDENCE—*properly overruled*. Where, in an action
to recover damages for injuries resulting in the death of plaintiff's
intestate, the petition alleges that such death was caused by
gross negligence amounting to wantonness on the part of the de-
fendant company, and the evidence of plaintiff tended to prove
such allegation, it was not error for the trial court to overrule de-
fendant's demurrer to plaintiff's evidence.

Error from Crawford District Court. Hon. J. S. West, Judge. Opinion filed July 21, 1897. *Affirmed.*

The petition alleged that plaintiff's intestate was killed while on a local freight train of the defendant Company, by the gross and wanton negligence of the Company, its agents, servants and employees. The answer, besides a general denial, averred that the alleged injury was caused by the negligence of the deceased.

The principal facts in the testimony of the plaintiff are as follows : Plaintiff's son, Charles W. Campbell, nineteen years of age, was in the habit of riding on defendant's cars over its railway between Pittsburg, Kan., where he resided, and Minden, Mo., a few miles distant, where he had been engaged for several

months in learning telegraphy. He made these trips without paying fare, but by and with the consent of the Company, through its agents, servants, and employees. On July 6, 1891, he started from Pittsburg on a local freight train of the defendant Company to go to Minden. This train was operated regularly between and beyond the stations named, and regularly carried passengers. Besides the deceased, there was one passenger, a lady, on that train. The conductor saw the deceased and did not demand or require the payment of fare when he collected the fare from the other passenger, and no fare was paid by deceased. Three men were in a freight car next in front of the caboose, with six horses, which they had loaded at Pittsburg for shipment. The trainmen knew that all of said persons were on the train at that time. The train stopped when about one mile and three-fourths from Pittsburg, near a large smelter, where there was a spur track, and the caboose and two or three cars in front of it were left standing about one hundred yards from the switch from which the side-track led out, while the engine with several cars attached was moved up a considerable grade to and beyond the switch. After the cars were stopped, young Campbell came out on the platform of the caboose and sat down on the railing near the brake wheel, with his back to the box car immediately in front where the men and horses were, and was shortly thereafter thrown under the wheels and so badly crushed that he died a few minutes later. His fall and death were occasioned by a sudden shock communicated to the car upon which he sat by a collision of two loaded coal cars, which were "kicked" down the grade from near the switch by the engine, against the cars which were left standing. No brake-

man was on the coal cars. They were set in motion by the engine and then detached from it and allowed to run down the grade. Deceased could not have seen the cars as they came down, and it does not appear that the trainmen saw him on the railing while switching. The cars started at a moderate rate of speed, but were running very fast — faster than the witness had ever before seen cars run while being switched — when they reached the standing cars, which they struck with great violence. The horses in the box car were separated by temporary partitions of pine scantlings. The concussion threw the men about the car, brought the horses to their knees, and broke the partitions. Deceased was thrown under the freight car, two wheels of which passed over him. The cars were driven back about one car length by the shock. None of the persons on the train knew that these cars were approaching it.

The petition alleged that the acts of the defendant, through its agents, servants, and employees, in sending the loaded cars down grade without a brakeman, with great force and violence against the cars on which were the deceased and other persons, was gross, reckless and wanton negligence which directly caused the death of plaintiff's intestate.

Defendant's demurrer to plaintiff's evidence was overruled, and thereupon it introduced its evidence. The instructions of the court were according to the theory of the petition; that is, the question as to whether or not the fatal injury occurred because of gross negligence amounting to wantonness on the part of defendant Company, was the only issue presented to the jury. The instructions defined gross negligence amounting to wantonness in the language of our Supreme Court.

420          RAILROAD CO. v. CAMPBELL.

S. Dept.              Opinion.  Milton, J.              6 Kan. App.

Verdict and judgment in the sum of fifteen hundred dollars in favor of plaintiff.

*Wallace Pratt, Charles W. Blair* and *B. S. Gaitskill,* for plaintiff in error.

*Morris Cliggitt,* for defendant in error.

MILTON, J.   The only issue presented for our consideration is the alleged error of the trial court in overruling the demurrer filed by the Railroad Company to the evidence of the plaintiff below.  A distinction between " gross negligence," and " gross negligence amounting to wantoness," is insisted upon by counsel for defendant in error, and he cites *K. P. Rly. Co. v. Whipple* (39 Kan. 531), Beach on Contributory Negligence, § 62, and other authorities as supporting his position.   " Reckless negligence " would express pretty accurately the ordinary conception of such conduct as that of the men, who, in this case, sent two loaded cars unattended by a brakeman down a steep grade toward and against other cars which contained unwarned and unsuspecting people. It is true that plaintiff's intestate was in an unsafe place, but harm in some degree was done to the men in the car with the horses, and to the horses, by the concussion.   It is not necessary to take into account the negligence of the deceased, if we hold that the case ought have gone to the jury under plaintiff's petition and evidence.   *K. P. Rly. Co. v. Whipple,* supra ; *Battishill v. Humphreys,* 64 Mich. 514, 38 N. W. Rep. 581 ; *Palmer v. Chicago, St. L. & P. R. R. Co.,* 112 Ind. 250, 14 N. E. Rep. 70, and cases there cited ; 2 Wood's Railway Law, 1258 ; Beach on Contributory Negligence, § 84.

If there had been no persons on the train, it would

RAILROAD CO. v. CAMPBELL.        421

July 21, 1897.        Opinion.  Milton, J.        E. Div.

have been very negligent to send those cars down grade without a brakeman, as property was thereby endangered. In this case, the danger was not only to property but also to life and limb of persons on board the train. The employees must have known it was unsafe to send down those cars unattended, and, while they ought to have cared, they did not care for the probable consequences of their negligent act. In the case of *Palmer v. Chicago, St. L. & P. R R. Co.*, supra, the Supreme Court of Indiana quotes from one of its former decisions, as follows :

"It is beyond question that to entitle one to recover for an injury to which his own negligence may have contributed, the injurious act or omission must have been purposely and intentionally committed, with a design to produce injury, or it must have been so committed under such circumstances as that its natural and reasonable consequence would be to produce injury to others. There must have been either an actual or constructive intent to commit the injury."

The court further observes :

"These last cases distinctly recognize the rule that direct and positive intent is not always requisite to constitute a wilful act. If it were not so, what is said about a reckless disregard of probable consequences and a constructive intention would be meaningless."

In *K. P. Rly. Co. v. Whipple*, supra, it is said : "A party may recover for the reckless or wanton conduct of another, or as we have said, 'for gross negligence amounting to wantonness,' without a formal and direct intention to injure any particular person."

It is evident that injuries to persons and property would be likely to result from doing what the employees of the Company did in this case. If such injuries would likely result from such conduct, then we

ought not to say that such conduct does not show a reckless disregard for the safety of others. *Smith v. A. T. & S. F. Rld. Co.*, 25 Kan. 744. We are not willing to declare as a matter of law that the conduct of the trainmen in this instance was free from the elements characterizing gross negligence amounting to recklessness or wantonness ; and this is precisely what we would do if we should hold that the demurrer to the evidence ought to have been sustained. What we do say is, that the evidence tended to prove such negligence and that it was a proper case for the jury. *Wabash Rly. Co. v. Brown*, 152 Ill. 484, 39 N. E. Rep. 273 ; *S. K. Rly. Co. v. Sanford*, 45 Kan. 372 ; *S. K. Rly. Co. v. Rice*, 38 id. 398 ; *K. C. Rly. Co. v. Fitzsimmons*, 22 id. 686 ; *U. P. Rly. Co., E. D., v. Rollins*, 5 id. 181. In the latter case the court says :

"Negligence is a question of fact for the jury. It is for them to determine whether there has been any negligence, and its nature and degree. Even where the circumstances are all admitted, if there is any doubt as to what they may prove, it is still a question for the jury. It is not the duty of the court to draw inferences from the evidence, but only to pronounce legal conclusions from facts admitted, or properly found."

As we view the matter, the court did not err in overruling the demurrer to plaintiff's evidence. The jury inferred from the whole evidence that the Railroad Company, through its employees, was guilty of that kind of negligence which entitled plaintiff to a recovery notwithstanding the negligence of his intestate.

The judgment of the trial court will be affirmed.