S. F. WALTERS, *Appellee*, v. THE MISSOURI PACIFIC
RAILWAY COMPANY, *Appellant*.

No. 16,589.

SYLLABUS BY THE COURT.

1. RAILROADS—*Duty to Stop Train Long Enough to Enable Passenger to Alight with Safety.* It is the duty of a railway company to use the highest degree of care which is reasonably practicable in transporting passengers and in setting them down at their destination, and the failure to stop a train at the destination of a passenger and afford him an opportunity to alight with safety is culpable negligence.

2. —————— *Contributory Negligence of Passenger Alighting from Moving Train under Direction of Conductor.* Where the railway company fails to stop its train at the destination of a passenger, and as it is passing the station the conductor of the train advises and directs the passenger to alight from the train while it is moving at a speed of from three to four miles an hour, the question whether the passenger who acts on the direction of the conductor and is injured is guilty of contributory negligence is one for the determination of the jury.

3. SPECIAL FINDINGS—*Consistency—Evidence—Duty of Jury to Follow Instructions.* The special findings of the jury examined and found not to be without support in the evidence nor contrary to the instructions of the court, and not inconsistent with the general verdict.

Appeal from Marshall district court; SAM KIMBLE, judge. Opinion filed June 11, 1910. Affirmed.

*W. J. Gregg, James W. Orr,* and *B. P. Waggener,* for the appellant.

*W. W. Redmond,* and *Theo. H. Polack,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This litigation, instituted to recover for injuries sustained by a passenger while alighting from a train, is here for a second review. (*Railway Co. v. Walters,* 78 Kan. 39.) In his petition

S. F. Walters alleged that on July 25, 1903, he was a passenger on a train of the Missouri Pacific Railway Company due to arrive at Bigelow at about four o'clock in the morning, and as the train approached his destination the conductor in charge of the train came into the car in which he was riding and directed him to go out upon the platform of the car and down upon the lower step, and that, relying upon the skill and prudence of the conductor, he did so, and in obedience to the order of the conductor he undertook to alight from the train, believing it safe to do so; that just as he was about to alight the conductor "signaled the train to proceed, and, without any notice to plaintiff, said train suddenly jerked forward, and in consequence of the aforesaid acts of the conductor plaintiff was jerked and thrown violently from the train, by reason whereof, and the jolt and shock incident thereto, the plaintiff sustained severe injuries to his spine, and further injury to his person and nerves in general as to produce hydrocele, by reason of which, and the said injury to his spine, plaintiff has been greatly and permanently injured."

At the trial Walters offered testimony tending to show that on the night in question he was a passenger for hire on the train of the railway company, and that as he approached the station the conductor came in and told him, "This is Bigelow, come on"; that he followed the conductor out of the car, and that the conductor directed him to "get down there on that step, and don't step straight out, but step with the train, so it won't hurt you, and be quick about it." He stated that the night was cloudy and somewhat dark, and when the coach had passed the depot about sixty feet he stepped off the train and sustained the injuries for which the action was brought. A witness who came to get the mail sack thrown from the same train testified that as the train passed the station a passenger was standing on the steps, and the conductor was above him with

a lantern in his hand; that he heard the conductor tell the passenger, who turned out to be Walters, to face the way the train was going or he would fall. The witness said the train did not stop, but was moving at the rate of about six miles an hour, and also that the conductor gave the "high ball," or go ahead sign, over the head of the passenger, who was standing on the lower step. There was also testimony that on the return trip the conductor inquired of the mail carrier if Walters was badly hurt, and that he also made inquiry as to the age and family of Walters. Testimony of a contrary nature was given by the trainmen, but the general verdict of the jury was in favor of Walters, and with it were returned answers to a number of special questions that were submitted.

It is contended by appellant that the court should have directed a verdict in favor of the railway company. It was the duty of the railway company to exercise the highest degree of care which was reasonably practicable in transporting this passenger, and also in setting him down at his destination; and the failure of the company to stop the train long enough to enable him to alight with safety, as the jury found in this case, was culpable negligence. (*A. T. & S. F. Rld. Co. v. Hughes,* 55 Kan. 491; *Railway Co. v. Walters,* 78 Kan. 39; *Railway Co. v. Wimmer,* 72 Kan. 566.)

It is insisted, however, that as Walters voluntarily alighted from the train when it was in motion the trial court should have held as a matter of law that his own negligence barred a recovery. There is, of course, some danger in getting off a moving train, however slow the rate of speed, but it can not be said as a matter of law that every case of boarding or alighting from a train in motion, without regard to the speed or the circumstances under which it is done, renders the passenger guilty of contributory negligence. In *A. T. & S. F. Rld. Co. v. McCandliss, Adm'r,* 33 Kan. 366, it was said that "stepping from a train of cars in motion

to a stationary platform, or to the stationary ground, which is more dangerous, is not always culpably dangerous and is not negligence *per se*." (Page 373.) In *A. T. & S. F. Rld. Co. v. Hughes,* 55 Kan. 491, where the conductor failed to bring his train to a stop, but directed the passenger to alight while it was in motion, the contention was made that the attempt to alight, with or without the invitation or order of the conductor, was contributory negligence. It was there said:

"It is not contributory negligence *per se* for a passenger to leave a train which is in motion. Of course, a passenger must exercise ordinary care, and if he voluntarily places himself in a perilous position, and incurs a danger so obvious that an ordinarily prudent man would not encounter it, there can be no recovery. Whether the act of Hughes in leaving the train while it was in motion constitutes contributory negligence barring a recovery depends upon whether the danger was so patent that a prudent man under the circumstances would not have made the attempt. We think it was clearly a question of fact for the jury to determine." (Page 498.)

Along the same line see: *S: K. Rly. Co. v. Sanford,* 45 Kan. 372; *Railway Co. v. Loewe,* 69 Kan. 843; *Railway Co. v. Holloway,* 71 Kan. 1.

Of course, exceptional cases may be surmised of a passenger jumping from a train where the speed was so great, the danger so obvious and the circumstances such that a court would be justified in directing a verdict against the passenger. The present case does not fall within that class. When Walters approached Bigelow and was escorted by the conductor to the platform of the coach he had a right to assume that the train would be brought to a stop. When he went down upon the lower step of the coach he must have known that the train was still in motion, but it appears that it was then going at the speed of about three to four miles an hour. Passing by the station without stop-

Walters v. Railway Co.

ping and carrying him away from his home would naturally have a tendency to disturb him. At that time the conductor advised him as to the manner of alighting, and also gave him the imperative direction to get off the train and do it quickly. In view of these circumstances, including the speed of the train and the direction of the conductor to alight, the matter of contributory negligence was a fair question for the determination of the jury. (*Cumberland Valley Railroad Co. v. Maugans,* 61 Md. 53; *New York, Phila. and Norfolk R. R. Co. v. Coulbourn,* 69 Md. 360; *The Louisville and Nashville Railroad Company v. Crunk,* 119 Ind. 542; *Penna. R. Co. v. Lyons,* 129 Pa. St. 113; *Carr v. Eel River, etc., R. R. Co.,* 98 Cal. 366, 21 L. R. A. 354, and note; 3 Thomp. Com. L. of Neg. § 3027; 6 Cyc. 643.)

It is argued that whatever may be the true rule on this question the instructions given by the trial court constituted the law of the case, which the jury were bound to observe, and that the jury in their findings went contrary to the instructions, and therefore there should be a reversal. In one of its instructions the court told the jury in effect that if an ordinarily careful and prudent person would not, under the circumstances which surrounded Walters when he alighted from the train at the time of the injury, have stepped from the train while it was in motion the plaintiff was necessarily negligent and can not recover. In a later instruction the jury were told:

"I instruct you as a matter of law that it is contributory negligence for a passenger on a train to undertake to alight from it in the darkness of the night, while it is in motion at the rate of from two to six miles an hour, without any light to guide his steps or movements."

The jury found that the train was in motion when Walters alighted, and that it was moving at a speed of from three to four miles an hour, and it is therefore argued that the finding necessarily violated the in-

struction of the court.  Leaving out of the question the correctness of the instruction quoted, it will be seen that it clearly involves other considerations than that the train was in motion and moving at the rate of speed mentioned by the court.  It will be observed, too, that the instruction includes the darkness of the night when the passenger alighted, and when there was no light to guide his steps or movements.  While Walters alighted from the train on the morning of July 26, between half past three and four o'clock, it was also found by the jury that it was not then so dark as to prevent Walters from seeing where he was stepping when he alighted.  As the element of darkness is lacking the argument of appellant that the jury disregarded the instruction is not good.

It is further contended that the jury must have violated an instruction to the effect that the direction or advice of the conductor to the passenger to alight from the train while it was in motion was not sufficient reason to justify him in doing so.  That single circumstance may not be sufficient to justify a passenger in stepping from a moving train.  The speed might be so great, the danger so palpable and the surrounding circumstances such that it would be gross negligence to jump from the train, even upon the invitation or direction of the conductor.  As we have seen, other circumstances entered into the consideration in this case, and hence it can not be said that the verdict violated the instruction of the court in this particular.

Another point of contention in the case was whether the hydrocele from which Walters was suffering resulted from the injury received when he alighted from the train or from an earlier injury which was inflicted while he was working as a section hand for the railway company, and for which settlement had been made and compensation paid.  The court instructed the jury in substance that Walters could receive nothing because

of that injury or any condition resulting from it. The jury were asked the question whether on alighting from the train Walters sustained an injury called "hydrocele," and whether it was originally so caused or was a recurrence of a former complaint. The answer of the jury was, "recurrence." The appellant infers from this answer that the jury awarded damages for the previous injury, for which compensation had been made. Of course, no recovery could be had for that injury, but if Walters had been cured of the disease of hydrocele resulting from the first injury, as the physicians of the railway company had decided when he was discharged from the hospital, and the later injury brought on the same disease or condition, no reason is seen why he could not recover for the consequences of the injury. Apart from that consideration, the jury found that other injuries than hydrocele resulted from the fall, and that in addition to this disease there were sprains of the back and the hips. A witness for the railway company, who is a physician, testified that when Walters returned to the hospital for treatment after the accident he was suffering from a sprain of the back and left hip, and that he then complained that the hydrocele had returned, but that the witness found no fluid in the sac and could discover no evidence of hydrocele. It can not be said that the injury for which appellee recovered was the earlier one, for which the company had settled, nor that it was not the one which resulted from falling from the train.

Appellant contends also that hydrocele is a disease which may be easily and permanently cured, and that the testimony shows that if Walters had submitted to a slight surgical operation he might have got rid of the disease. The court told the jury in substance that if by a reasonable and safe operation he might have been restored to health, and neglected or refused to submit to it, he would not be entitled to recover as for a permanent disability, but could only recover for the losses.

sustained up to the time reasonably necessary to perform the operation and to bring about his recovery. It was not an undisputed fact in the case that the hydrocele with which Walters was afflicted after falling from the train could have been removed by a surgical operation, nor that he could safely have submitted to an operation. A physician who examined him testified at length as to his condition, and stated that an operation could not have been performed with an assurance of a cure; that radical treatment was not advisable, and might terminate fatally.

On the testimony it can not be held that the award of damages is excessive and we discover no error in the proceedings which justifies a reversal. The judgment is affirmed.