CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* CLAUNTS.

Opinion delivered May 22, 1911.

1. CARRIERS—DUTY AS TO STOPPING TRAINS.—While it is the duty of a railroad company, as a carrier of passengers, to stop its trains at stations which it has, by its regulations, noted for stopping, a company has a right to determine what trains shall stop at its stations; and if a particular train does not stop at a passenger's destination, he cannot require the trainmen to stop it there. (Page 250.)

2. SAME—INDUCING PASSENGER TO ALIGHT.—Where the trainmen induce a passenger reasonably to believe that the train has stopped, and invite him to alight, and he is injured in alighting, without negligence on his part, the company is liable. (Page 251.)

3. SAME—PASSENGER NEGLIGENT IN ALIGHTING.—Where, on approaching a station, the engineer gave a signal which a passenger supposed to be a stop signal, and the passenger told the brakeman that he desired to get off if the train made a stop, and the brakeman answered, "All right," and opened the vestibuled door, but the train never stopped, and the passenger jumped off while the train was in motion and was injured, he was guilty of contributory negligence, as a matter of law, and was not entitled to recover. (Page 253.)

Appeal from Logan Circuit Court, Southern District; *Jeptha H. Evans,* Judge; reversed.

*George B. Pugh* and *Thomas S. Buzbee,* for appellant.

1. Appellant was not guilty of any negligence, and a verdict should have been directed in its favor. 63 S. E. 445; 54 Am. & Eng. R. Cases (N. S.) 417; 93 Ark. 240.

2. Appellee was guilty of negligence or assumed the risk of injury in getting down and standing upon the step of the car while the train was in motion. 46 Ark. 528; 61 S. E. 826; 52 Am. & Eng. R. Cases (N. S.) 326; 75 N. E. 515; 44 Am. & Eng. R. Cases (N. S.) 755; 83 N. E. 32; 50 Am. & Eng. R. Cases (N. S.) 302; 86 Ark. 325.

3.   The first instruction given is erroneous in that it assumes that there is evidence tending to show that some employee of appellant led appellant to believe that the train would stop at Blue Mountain, and that appellee might safely alight there. The evidence does not justify any such assumptions.

*Jo Johnson,* for appellee.

The evidence shows that the agent at Blue Mountain had out a stop signal; that the engineer blew the stop whistle and slowed down as if to stop at the station, and that the station agent then caused the engineer to proceed without stopping, which he did with the sudden jerk which caused plaintiff to fall.   There can be no question but that appellee was misled by the halting of the train and by appellant's servants. Having invited him to alight, it was appellant's duty to stop long enough to enable him to do so in safety.   83 Ark. 217; *Id.* 437; 131 S. W. 903; 134 S. W. 107; *Id.* 31; 150 Ill. App. 470; 134 S. W. 202; 112 Pac. 152. The question whether it was negligence for appellee to stand on the step of the car while the train was in motion was, under the facts of this case, a question for the jury.   It was not negligence *per se.*   86 Ark. 325; 88 Ark. 12.

FRAUENTHAL, J.   This was an action instituted by P. M. Claunts, the plaintiff below, to recover damages for an injury which he alleged he sustained while a passenger in attempting to alight from one of defendant's trains.   Upon a trial of the case the jury returned a verdict in favor of the plaintiff, and it is contended by counsel for defendant upon this appeal that the judgment entered thereon should be reversed upon the ground that there is not sufficient evidence to sustain the verdict.   Giving to the testimony its strongest probative force in favor of the plaintiff, it established the following facts:

The plaintiff became a passenger upon one of defendant's trains on the early morning of November 8, 1907, at Booneville, Arkansas, and desired to be carried to Magazine, Ark.   He paid his railroad fare to the auditor or conductor upon the train, and at the time told that employee that he desired to go to Magazine, and he was then informed by said employee that the train, according to the regulations of the railroad company, did not stop at that station, and that the first stop would be made at Belleville, and that he could there take a train back to Magazine.   It does

not appear from the evidence what amount of fare was paid by the plaintiff, and to what distance the amount so paid would have carried him. The station next beyond Magazine was Blue Mountain, and according to the regulations of the company the train did not stop at that station, and at the time of paying his fare the employee so informed plaintiff. It appears that when the train was approaching Blue Mountain the engineer gave two blasts of the whistle, which the plaintiff understood to be a stop signal, and the train began to slacken its speed. About this time a person whom the plaintiff supposed to be a brakeman was passing through the coach, and the plaintiff said to him: "If this train stops here, I want to get off." As the brakeman got to the door of the coach, he replied, "All right," and opened the trap door and vestibule door of the coach. The plaintiff went down the steps of the coach preparatory to alighting from the train, and stood on one of them while the train was still in motion, waiting for it to stop. The train, however, instead of further slacking its speed, increased it, and the plaintiff, losing his balance and fearing that he would fall, jumped from the train on to the station platform and was injured.

This is substantially the testimony of the plaintiff himself, and the only evidence adduced upon the trial as to the manner in which the injury was received. It also appears from the testimony of the plaintiff that the station agent at Blue Mountain had a stop signal displayed as the train approached that station, but that as a matter of fact this train was not to stop there. Upon the engineer giving the two blasts of the whistle, indicating that the train would stop at the station, the agent noticed that he had made an error in his signal and immediately changed it so that the train would not stop but would pass on.

Giving to this testimony its full force and every inference that could be reasonably deduced therefrom, is the plaintiff entitled to recover?

It is the duty of a railroad company as a carrier of passengers to stop its trains at stations which it has, by its regulations, noted as the place for stopping, and to there stop for a sufficient length of time to permit its passengers in the exercise of due diligence to safely leave its trains. But it is well settled that a railroad company is not required to stop all of its trains at every

station.    The company has the right to make reasonable regulations to stop at its stations only such trains as, in the management of its business, it may determine should be stopped at certain stations.    It is the duty of a passenger to inquire and. learn whether the train upon which he intends to take passage will stop, under such regulations of the company, at the station to which he desires to be carried; and if such train does not stop at such station under such regulations, he can not require the employees in charge of the train to stop it there.    2 Hutchinson on Carriers (3 ed.) § § 1160 and 1117; *St. Louis, I. M. & S. Ry. Co.* v. *Roseberry*, 45 Ark. 256; *St. Louis, I. M. & S. Ry. Co.* v. *Atchison*, 47 Ark. 74; *Railway* v. *Adcock*, 52 Ark. 406.

In the case at bar, when the plaintiff paid his fare, he was duly informed that the train did not stop at Magazine, the point where he desired to go, nor at Blue Mountain, the next station thereto, nor at any station short of Belleville; and he was not informed by any of defendant's agents that the train would stop short of said latter station.    So that the plaintiff knew that, according to defendant's regulations, the train would not stop at Blue Mountain.    But it is urged by counsel for plaintiff that when the train approached Blue Mountain he was misled by the stop signal given by the engineer and the conduct of the brakeman in opening the vestibule door into believing that the train would stop at said station, and that he was therefore justified in acting on such belief.

It is true that railway carriers of passengers must be extremely careful not to mislead their passengers into the belief that they are invited to alight from the train when it is not so intended.    A carrier of passengers must be careful not to invite or to mislead its passengers into alighting at an improper place. If its servants in charge or management of a train induce its passengers to reasonably believe that the train has stopped, and that they are invited to alight, and if the passenger in so doing is injured while he is in the exercise of due care and diligence, the company will be liable.    2 Hutchinson on Carriers, § 1122; 6 Cyc. 614; *St. Louis, I. M. & S. Ry. Co.* v. *Person*, 49 Ark. 182; *Railway Co.* v. *Johnson*, 59 Ark. 122; *Kansas City S. Ry. Co.* v. *Davis*, 83 Ark. 217.

But, under the uncontroverted evidence in this case, the ser-

vants of the defendant did not induce plaintiff to believe that the train would stop at Blue Mountain, nor did they by any word or conduct direct or invite the plaintiff to alight from the train at that station. He had been informed and knew that this train would not stop at that station. When the two blasts of the whistle were given by the engineer as the train approached this station, the plaintiff, supposing that this was a stop signal, said to the brakeman that he desired to get off the train at that place if the train made a stop there, and the brakeman simply answered: "All right," thereby indicating only that if the train did actually stop at that place the plaintiff could get off. The opening of the vestibule was only to carry out this request made by plaintiff and to make preparations to permit him to get off the train at that place in the event it stopped there. But no employee on the train directed plaintiff to go on the coach platform or on the coach steps, or invited him to do so. At the most, the brakeman only acceded to his request that he be permitted to get off the train in event that it made a stop at Blue Mountain.

Ordinarily, a passenger is not justified in being on the steps of a coach until the train has come to a stop; and we do not think that under the circumstances of this case the plaintiff was justified in going and remaining on the steps of the coach while the train was in motion and before it had stopped by any direction or conduct of any of defendant's employees. 4 Elliott on Railroads, 504; *St. Louis, I. M. & S. Ry. Co.* v. *Rush,* 86 Ark. 325; *Cincinnati, etc., Ry. Co.* v. *McLain,* 147 Ind. 188; *Byron* v. *Lynn & Boston Rd.,* 177 Mass. 303; *Southern Ry. Co.* v. *Strickland* (Ga.) 61 S. E. 826.

It is true that it has been held by this court that ordinarily it is a question of fact to be determined by a jury under the circumstances of each case as to whether or not a passenger is guilty of contributory negligence in alighting from a moving train. But that doctrine we do not think is applicable to the facts of this case. That doctrine applies to those cases where the train has actually stopped at its regular station, or the passenger has reason to believe so, and the train then suddenly starts while the passenger is alighting therefrom, or where a train is moving so slowly at the regular stopping place, or one which the passenger has reason to believe and does believe to be a regular stopping

place, that it could not be said as a matter of law to be negligent to alight therefrom. *St. Louis, I. M. & S. Ry. Co.* v. *Cantrell,* 37 Ark. 519; *Memphis & L. R. R. Co.* v. *Stringfellow,* 44 Ark. 222; *St. Louis, I. M. & S. Ry. Co.* v. *Rosenberry,* 45 Ark. *supra; Little Rock & F. S. Ry. Co.* v. *Atkins,* 46 Ark. 423; *St. Louis, I. M. & S. Ry. Co.* v. *Rush, supra; St. Louis, I. M. & S. Ry. Co.* v. *Fambro,* 88 Ark. 12.

In the case at bar the plaintiff was informed and knew that this train would not stop at Blue Mountain under the regulations of the company, and he was not informed by any employee that it would stop at this station. This station was not one of the stations at which this train would stop, and under the undisputed evidence the plaintiff knew that it had not stopped at this station. Until the train actually stopped, the plaintiff was not justified in going down the coach steps and there remaining while the train was in motion, and he was not justified in doing this by any direction or conduct of the defendant's employees. If he went on the coach steps before the train had stopped, and while standing on the steps while the train was in motion was injured, then there can be no negligence imputed to the defendant upon the ground that the movement of the train was increased. As is said in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Rush, supra:* "The company could move its trains as it saw proper, as long as such movements were not calculated to injure passengers who were in their proper place or in such places as would naturally be expected of careful passengers." "For it can not be assumed by the train operatives that passengers would be in such position on the steps of the car that they would be thrown from the steps by any sudden movement of the train before it came to a stop at the station."

The right of the plaintiff to recover herein can only be based upon some act of negligence done by the company or its employees causing his injury. Such act of negligence could, under the circumstances of this case, only grow out either of the sudden increase of the speed of the train or by reason of the plaintiff being directed or invited by one of defendant's employees to take his position on the steps while the train was still in motion and before it had come to a stop. Under the uncontroverted evidence which was adduced upon the trial of this case, the defendant was not guilty of either one of these acts of negligence. On the

contrary, the plaintiff of his own motion assumed the position of danger on the steps, and his injury was the result solely of his own act of negligence.

It follows that the verdict of the jury was contrary to the uncontroverted evidence adduced upon the trial of this case. The judgment is accordingly reversed, and this cause is dismissed.