## KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* WORTHINGTON.

### Opinion delivered November 20, 1911.

1. CARRIERS—DUTY TO STOP TRAIN AT STATION.—It is the duty of a railroad company, as a carrier of passengers, to stop its trains at a station which by its regulations it has designated as a place for stopping, and there to remain a sufficient time to permit its passengers, in the exercise of ordinary care, to leave its trains safely.    (Page 131.)

2. SAME—PROXIMATE CAUSE OF INJURY.—In the absence of any rule or custom of the railroad to the contrary, a passenger on a freight train has a right to act upon the assumption that the train would be stopped at the usual stopping place; and if he is injured in acting upon that presumption, and is not himself negligent, the negligence of the railroad company is the proximate cause of his injury.    (Page 132.)

3. SAME—CONTRIBUTORY NEGLIGENCE — WHEN QUESTION FOR JURY.— Where, on approaching the destination of a passenger, a freight train slowed up as if it were going to stop, and the passenger went upon the steps of the caboose, and, seeing that the train was not going to stop, undertook to alight therefrom and was injured, it was a question for the jury to determine whether he was guilty of contributory negligence unless the attending circumstances show so clearly that he acted recklessly and imprudently that reasonable minds could arrive at no other conclusion.    (Page 133.)

Appeal from Polk Circuit Court; *Jeff T. Cowling*, Judge; affirmed.

*Read & McDonough*, for appellant.

1. As a matter of law, there was neither allegation nor proof of any negligence on the part of appellant proximately causing the injury. The complaint itself fails to state a cause of action, in that its allegations are such as to leave it a matter of conjecture whether the injury was due to plaintiff's own negligence or to the negligence of the defendant. Courts and juries are not permitted to fix liability upon a carrier through mere speculation and conjecture. 131 S. W. 44; 122 N. Y. 292; 132 S. W. (Ark.) 462; 1 Thompson on Neg. § § 404 and 7395; 145 Fed. 327; 105 Wis. 311; 15 N W. 70; 90 Wis. 332; 101 Wis. 371; 181 Fed. 91; 200 U. S. 480; 115 S. W. 890. This is not a case for the application of the statute, Kirby's Digest, § 6773, making an injury by a running train *prima facie* negligence. The doctrine that negligence is presumed

from the fact of the injury does not apply where the accident or injury, unexplained by attendant circumstances, might as plausibly have resulted from negligence on the part of the passenger as of the carrier.  75 Ark. 479, 491, and authorities cited; 134 S. W. 949.  Before there could be any presumption that the carrier was negligent  the plaintiff must prove that he was in his proper place.  It does not arise where the plaintiff shows that he was in a place of danger without the knowledge of the employees of the carrier, and in such case the cause can not be submitted to the jury.  163 Fed. 106; 40 Ark. 298; 69 Ark. 380; 82 Ark. 522; 131 S. W. (Ark.) 958.

The alleged negligence in failing to stop the train is not the proximate cause of the injury.  Plaintiff's own testimony, and all the evidence, goes to show that the train was slowing down, and that the train operatives were in the act of stopping it when he stepped off in the darkness.  His was the intervening act of a responsible agent which was the direct and efficient cause of the injury.  68 S. E. (Va.) 395; *Id.* 398; 87 Ark. 576; 69 Ark. 402; 66 Ark. 68; 67 S. E. (Ga.) 898.

2.  Plaintiff was, as a matter of law, guilty of contributory negligence.  While ordinarily it is an issue of fact whether or not a passenger is guilty of negligence in alighting from a moving train, it is also well established that where the facts are undisputed the question is one of law.  86 Ark. 398; 54 Ark. 25; 132 Ill. App. 400; 34 So. (La.) 110; 40 Ark. 322; 46 Ark. 437; 131 S. W. 679; 57 Ark. 461; 58 Ark. 399; 61 Ark. 555; 71 Ark. 593; 77 Ark. 556; 78 Ark. 61; 79 Ark. 337; 80 Ark. 169; 83 Ark. 22; 88 Ark. 510; 90 Ark. 210; 91 Ark. 14; 99 Ark. 248; Thompson on Neg. § 3018; 23 Pa. St. 147.

*J. I. Alley*, for appellee.

Under the facts in this case, it was purely a question for the jury whether or not it was negligence *per se* to alight from the train while in motion.  86 Ark. 325; 46 Ark. 423; 37 Ark. 519; 82 Ark. 504; 82 Ark. 393; 99 Ark. 248.

FRAUENTHAL, J.  This was an action instituted by W. A. Worthington, the plaintiff below, to recover damages for injuries which he alleged he received while attempting to alight as a passenger from one of defendant's trains.  On November 25, 1910, the plaintiff became a passenger on one of defendant's

local freight trains from Mena to Cove. It appears that Cove was a station on defendant's railroad, and that defendant carried passengers on its local freight trains and stopped such trains at said station when having passengers for that place. Upon entering the caboose of the train at Mena, the plaintiff notified the conductor that he desired to be carried to Cove and paid his fare to that station. Before arriving at that station, one of the brakemen went to the engineer and notified him that they had a passenger for Cove, and to stop the train there.

Plaintiff was a resident of Cove, and was well acquainted with the location of the depot platform and the general condition of the track at that place. When the train approached Cove, its speed was slackened until it was going at the rate of probably from three to four miles per hour as it passed the depot platform. In the meanwhile, as the train approached the platform, the plaintiff left his seat and went to the rear of the caboose preparatory to leaving the car. The train did not stop at the depot platform, but was going slowly past it, and the plaintiff, fearing that it would not stop but would carry him past his destination, attempted to alight from the train, and in doing so was thrown to the ground with such force that he was severely and painfully injured.

The testimony tended to prove that, as the train was passing the depot platform, it was going at such a slow rate of speed that one might have left it with safety. All of the employees of the defendant upon the train testified to this. One of the brakemen was asked: "Q. The train was going sufficiently slow for a man to get off without injury? A. Yes, sir; I have got off lots of times that slow."

The testimony tended further to prove that just about or after the train had passed the platform, the conductor looked for the plaintiff, and, not seeing him, and observing that the train had passed the depot platform so slowly, he thought that he had alighted from the caboose in safety, and thereupon he gave a signal to the engineer not to stop but to go on, and the train increased its speed, and it did not stop at all. The evidence shows that it was dark when the plaintiff attempted to alight from the train; but it also shows that the plaintiff was well acquainted with the platform and surrounding conditions

at that place, that he was active in his movements, and was accustomed to alight from trains.

Upon the trial of the case, a verdict was returned in favor of plaintiff, and the railway company has appealed.

It is contended by counsel for defendant that, according to the testimony most favorable to the cause of plaintiff, the court should have directed a verdict against his right to recover. It is urged that the defendant under this testimony was not liable for plaintiff's injury, because the failure to stop the train at the station was not the proximate cause thereof, which it is claimed was solely the result of his leaving the train while it was in motion. It is also urged that according to the testimony the plaintiff was guilty of contributory negligence in going to the steps of the caboose and attempting to alight therefrom while the train was in motion, or that he thereby voluntarily assumed the risk of any injury resulting therefrom.

It is well settled, we think, that it is the duty of a railroad company as a carrier of passengers to stop its trains at a station which by its regulations it has designated as a place for stopping, and to there remain for a sufficient time to permit its passengers, in the exercise of ordinary diligence and care, to safely leave its trains. The passenger must not only be carried properly and safely, but he must be carried to the end of his journey for which he has paid his fare, and he must be put down at the usual stopping place at the end of such journey. Unless the proof shows that, according to the regulations of the company, or a custom in handling trains, a distinction is made between trains exclusively employed in carrying passengers, and those engaged in carrying freight and passengers, it is the duty of a railroad company to transport the passenger on either kind of train to the usual stopping place and there stop its trains and permit the passenger to alight therefrom. 2 Hutchinson on Carriers (3 ed.), § 1117.

In the case at bar, there is no evidence that any distinction was made in this regard by any rule, regulation or custom of defendant between the two kinds of trains. The plaintiff had the right to act upon the belief and assumption that the defendant would stop its train at the usual stopping place at Cove, so that he could there alight. When the train slackened its speed and approached the platform slowly, the plaintiff was

therefore warranted in the belief that it was about to and would stop there, and was justified in acting upon that belief. It then became a question for the jury to say whether or not the plaintiff acted with ordinary prudence when he left the caboose and proceeded to the steps thereof preparatory to alighting.

It is contended that the plaintiff was guilty of an act of negligence contributing to his injury by going upon the steps of the caboose while the train was still in motion, and before it had actually stopped; and to sustain this contention we are cited to the cases of *St. Louis, I. M. & S. Ry. Co.* v. *Rush*, 86 Ark. 325, and *Chicago, R. I. & P. Ry. Co.* v. *Claunts*, 99 Ark. 248. But we do not think that the principle advanced in those cases is applicable to the facts of this case. In those cases the train had not stopped at the station, and the passenger was not notified or informed that the train would stop at the station. On the contrary, the passenger knew that the train would not stop, and took his position upon the steps of the coach without direction from any employee of the carrier, and without any right to believe or assume that the train would stop. In those cases the passenger, while at a place where he had no right to be, and without the knowledge of the carrier's employees of his position, was *thrown from the* train by the sudden increase in the movement thereof. It was there held that the train operators had a right to assume that the passenger was in his place in the coach, and could move the train as they saw proper as long as such movement was not calculated to injure passengers who were in such places as would naturally be expected of careful passengers.

In the case at bar, according to the regulations of the defendant, the train should have stopped at this station, and plaintiff had a right to assume, when it slackened its speed and slowly approached the station, that the train would stop at that place. This was the place to which the defendant had agreed to carry him and put him down, and it can not be said as a matter of law, under these circumstances, that the plaintiff was negligent in going to the steps of the caboose preparatory to alighting from the train. At the time he attempted to alight, the train was moving slowly; but it was passing the depot platform and did not stop. Under the circumstances, the jury may well have been warranted in finding that the plaintiff,

after he had reached the steps of the caboose, believed, and was justified in believing that the train was not going to stop at the station, but would carry him past his destination.   An emergency was thus presented, and a necessity for sudden action placed upon the plaintiff.   This was caused by the negligence of the defendant in failing to stop its train at the station. The plaintiff by this act of negligence on the part of the defendant was either required to undergo the inconvenience and annoyance of being carried past his station if he remained upon the train, or to leave the train while still in motion.   If, as a matter of law, he was not guilty of contributory negligence in leaving the moving train under the circumstances of this case, then the injury which he sustained was due to the sole negligence of the defendant in failing to stop its train, which was the proximate cause thereof.   The immediate efficient cause of the plaintiff attempting to leave the train was the omission of the defendant to stop its train and its act in passing the station. This created a situation that necessitated immediate action on plaintiff's part.   The act of plaintiff in alighting from the train was only an incidental cause contributing to the injury, which was induced by the defendant's negligent failure to stop its train.   If in thus acting the plaintiff was negligent, he would then, and only then, be precluded from a recovery because of his contributory negligence.   *Little Rock & F. S. Ry. Co.* v. *Atkins,* 46 Ark. 423;  3 Hutchinson on Carriers (3 ed.), § 1430; 29 Cyc. 500.

The question as to whether or not a passenger is guilty as a matter of law of contributory negligence, precluding a recovery for an injury sustained by attempting to alight from a train while moving past the station at which it should stop to enable him to alight, has been decided differently by different courts.   This court has steadily adhered to the view that the attempt of a passenger to alight from the train while it is passing the place where it should stop to permit him to leave it will not as a matter of law be deemed an act of negligence upon his part unless the attending circumstances show so clearly that he acted recklessly and imprudently that reasonable minds could fairly arrive at no other conclusion.   Otherwise, it becomes a question for a jury to determine whether or not

such attempt to leave the train while in motion is one of negligence.

In the case of *Little Rock & F. S. Ry. Co.* v. *Atkins, supra,* it was held that it was not negligence *per se* for a passenger to leave a moving train.

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Cantrell,* 37 Ark. 526, this court said: "It may as a general proposition be said that it is imprudent or a want of ordinary care to alight from a train while it is in motion; but whether it was so in a particular case must depend upon the circumstances under which the attempt was made. It would not be so if the train was moving so slowly that no damage could be reasonably apprehended."

In the case of *Railway Co.* v. *Tankersly,* 54 Ark. 25, the court, speaking through Mr. Justice HEMINGWAY, said: "If it would seem to a person of ordinary prudence and caution to be safe to step off, considering the train's speed, the situation at the place of alighting, the opportunity to see where the step was made, and the activity of the person making it, and all other circumstances reasonably affecting the safety of the attempt, it could not be deemed negligence in the plaintiff to do it." *Memphis & L. R. Ry. Co.* v. *Stringfellow,* 44 Ark. 322; *St. Louis, I. M. & S. Ry. Co.* v. *Rosenberry,* 45 Ark. 256; *St. Louis, I. M. & S. Ry. Co.* v. *Person,* 49 Ark. 184; *St. Louis, I. M. & S. Ry. Co.* v. *Leamons,* 82 Ark. 504; *St. Louis, I. M. & S. Ry. Co.* v. *Rush, supra; Chicago, R. I. & P. Ry. Co.* v. *Claunts, supra;* 3 Thompson on Negligence, § 3055; 3 Hutchinson on Carriers (3 ed.), § 1179.

The failure to stop a train at a station will not justify a passenger in attempting to alight under circumstances which are obviously hazardous. But if the necessity of leaving the train while in motion has been put upon the passenger by the negligence of the carrier in failing to stop its train at the station, then contributory negligence will not be imputed to the passenger from the fact of his attempting to alight from the moving train if under the circumstances of the case such act was not a reckless or imprudent one.

Under the circumstances of this case, we are of the opinion that it was a question for a jury to determine whether or

not the plaintiff was guilty of contributory negligence in attempting to leave the train as he did, while it was in motion.

Counsel for appellant have called to our attention a number of assignments of error, which they claim the court made in its rulings upon the instructions. We have examined each of these assignments, and fail to find that any of them is well founded. The instructions which the court gave are in conformity with the above principles which we think are applicable to the facts, and the instructions cover correctly every issue that was involved in a fair determination of the merits of this case. We do not think it would serve any useful purpose to note these assignments in detail. By these instructions, the case was fully submitted to the jury upon the issues (1) as to whether or not the defendant was negligent in failing to stop its train at its station at Cove, and (2) as to whether or not plaintiff was guilty of contributory negligence in going to the steps of the coach and in leaving the train while it was in motion under the circumstances of this case. Upon these issues the jury returned a verdict in favor of the plaintiff, and we are of the opinion that it is sustained by sufficient evidence.

The judgment is accordingly affirmed.

KIRBY, J., dissents.