[Civ. No. 2051. Third Appellate District.—June 21, 1920.]

AMEDEO VIETTI, Respondent, v. WALKER D. HINES, as Director-General of Railroads, etc., Appellant.

[1] COMMON CARRIER — SALE OF TICKET — MEANS OF REACHING AND ALIGHTING AT DESTINATION—DUTY OF CARRIER.—When a carrier of persons for hire sells a ticket entitling a passenger to ride on its train or other vehicle used for the transportation of passengers to a specified destination, it is the duty of such carrier to see that the passenger is afforded all reasonable means for reaching and alighting at his point of destination with safety to himself.

[2] NEGLIGENCE — FAILURE OF CARRIER TO STOP TRAIN — SUBJECTING PASSENGER TO RISK—LIABILITY FOR INJURY—CONTRIBUTORY NEGLIGENCE.—In failing to stop its train at the specified destination so as to enable a passenger to alight without subjecting him to some risk or danger to his personal safety and compelling him to leave the train while it is in motion, however slow the speed of the train is diminished at that point, the carrier is guilty of a violation of a duty which it owes to such passenger, and its negligence thus committed must be held to have been the proximate cause of the injuries received by such passenger in alighting, unless it can be held, upon a view of the evidence, as a matter of law, that such passenger was guilty of contributory negligence, without which the damage would not have occurred.

[3] ID.—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.—Where contributory negligence is set up as a defense to an action for damages for personal injuries received through the alleged negligence of the defendant, the burden is upon the latter to prove such defense.

[4] ID.—ALIGHTING FROM MOVING TRAIN—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE.—Whether one alighting from a moving train and thereby receiving personal injuries is guilty of contributory negligence is a question which must be determined from all the circumstances and conditions surrounding the passenger immediately prior to the injury.

[5] ID.—ACTION FOR DAMAGES—INJURIES RECEIVED WHILE ALIGHTING FROM TRAIN—SURROUNDING CIRCUMSTANCES—NEGLIGENCE PER SE. In this action for damages for personal injuries ·sustained by plaintiff in alighting from defendant's train while it was in motion, in view of the facts that the train had slowed down to a rate of speed which would enable the average person of ordinary alertness to alight from it with safety, that another pas-

---

1. Duty of carrier to see that passenger has alighted before starting train at station, note, 25 L. R. A. (N. S.) 217.

senger had just alighted with safety, and plaintiff himself under like circumstances had on several previous occasions alighted safely from the same train while it was in motion, it could not be said that the act of plaintiff in jumping from the train involved such an act of imprudence or carelessness as to justify the declaration that it amounted to negligence *per se* or as a matter of law.

[6] ID.—FAILURE TO STOP TRAIN—ALTERNATIVE COURSES OPEN TO PASSENGER—NECESSITY FOR INSTANTANEOUS DECISION—INJURY—LIABILITY.—Where a passenger on a train finds himself suddenly placed in a position where he is compelled to decide in an instant of time whether he shall alight from the train while it is in motion and before its speed is increased or to go on to the next station, he is not to be expected to act with the highest degree of prudence, and if it happens that he has not exercised the best judgment or that degree of prudence which he would have shown under ordinary circumstances, particularly where his position has been brought about by the negligent or wrongful act of the railroad company, he should not be held to have been guilty of such negligence as would preclude him from recovery for such negligent or wrongful conduct of the company, where physical or other injury has resulted to him from the course he has, under such circumstances, elected to adopt.

[7] ID.—INCONSISTENT TESTIMONY — HOW CONSIDERED — PROVINCE OF COURT AND JURY.—In passing upon the testimony of a witness elicited on cross-examination, such testimony is not to be detached from his examination in chief or considered without reference to the latter; and it is for the court or the jury to determine how far, if at all, inconsistencies in the testimony of a witness go toward weakening such testimony or in impairing the credibility of the witness.

APPEAL from a judgment of the Superior Court of Shasta County. J. E. Barber, Judge. Affirmed.

The facts are stated in the opinion of the court.

George R. Freeman and Frank Freeman for Appellant.

Oscar Geballe and Carr & Kennedy for Respondent.

HART, J.—This is an appeal by the defendant from a judgment in an action for personal injuries, the cause having been tried by the court without a jury.

---

6. Act in emergency as exonerating from charge of contributory negligence, notes, Ann. Cas. 1914D, 1217; 37 L. R. A. (N. S.) 43.

On April 16, 1918, plaintiff, a woodcutter, employed by Lamoine Lumber Company, at Lamoine, was visiting in Redding. He went to Redding, he testified, to take a "couple of days' lay-off." At about 5 o'clock that evening he received a telegram recalling him to Lamoine. The telegram read: "Lamoine, California, 9:08 A. M. April 16th, 1918. A. Vietti, care of B. Vietti, Redding, California. Come up at once. We found several mistakes in the bill. Cannot wait longer. Andrew Vaconi. 9:30 A. M." He then went to the office of the Southern Pacific Railroad Company in Redding, bought a ticket for Lamoine, for which he paid one dollar and forty cents, and boarded the next train leaving Redding, which was train known as No. 14. He sat in the smoking-car, the conductor took up his ticket and gave him the usual "hat-check." At Kennett, Hurtzig, another employee of the Lamoine Lumber Company, boarded the train bound for Lamoine. At about 11:30 P. M. the train reached Lamoine, which was a "flag station." The conductor of the train, when he took up plaintiff's hat-check, told him he would have to jump; that he could not stop as he "had a string of cars." The train slowed to four or five miles an hour, and Hurtzig and the plaintiff started toward the platform of the car for the purpose of alighting. The plaintiff, according to his testimony, said to the conductor that he would not jump; but it appears that Hurtzig alighted while the train was still moving and thereupon and, after having been ordered several times either by the conductor or the brakeman to jump, the plaintiff leaped to the ground. The plaintiff testified, as did also Hurtzig, that the train or the car in which they rode was, at the time the former alighted, between three and four hundred yards from the station. The plaintiff further testified that, before he attempted to jump from the car and while he was standing on the steps leading to the platform of the car, he heard the noise incident to the pulling of the bell-cord, signaling, as Hurtzig testified, the engineer to speed up. He also testified that he had on a few previous occasions alighted from the same train at Lamoine in the night-time when it was in slow motion, but that, before doing so or attempting to do so, either the conductor or the brakeman would first alight to the ground and have a lighted lantern so that a passenger

leaving the train while it was moving could see where to alight on the ground. On the occasion of the accident, however, neither the conductor nor the brakeman left the train, he testified; nor, he further testified, did either have a lighted lantern on the platform to enable a passenger leaving the train to guide himself in making a leap so as to avoid striking some object which might be near the track. In fact, the plaintiff testified, there was no light about the station at all. He said that when he reached the ground he struck a ''pebble'' or a loose rock and fell to the ground and thus sustained the injuries (a sprained ankle and bruises on and about the face) of which he here complains.

The witness, Hurtzig, testified that the train had gone about twenty feet from the time that he alighted and the time the plaintiff jumped, and that he heard ''the air'' and the bell-cord pulled, but whether this was done before or after the plaintiff jumped he could not say.

The above embraces in substance a recital of the circumstances under which the injuries complained of were received.

In appellant's brief it is stated: ''That plaintiff was injured is not to be disputed, and there is no contention made that the amount of damages awarded to the plaintiff is excessive, or that any ruling respecting the admission or rejection of testimony is of sufficient importance to urge as a ground for reversal. Nor is it necessary to refer to the witnesses who testified for the defendant. Our contention is that the testimony of the plaintiff shows that he was guilty of contributory negligence that bars recovery by him.''

[1] In the first place, it may be laid down as a settled and indisputable rule that when a carrier of persons for hire sells a ticket entitling a passenger to ride on its train or other vehicle used for the transportation of passengers to a specified destination it is the duty of such carrier to see that the passenger is afforded all reasonable means for reaching and alighting at his point of destination with safety to himself. [2] Having sold the plaintiff a ticket to Lamoine, it was the duty of the defendant, upon reaching that point, to have stopped the train for a time sufficient to enable the plaintiff to leave the train without, in doing so, incurring a risk to his personal safety which could not arise or exist

under the usual or ordinary conditions existing or peculiar to that particular station; and, in failing to stop its train at Lamoine so as to enable the plaintiff to alight without subjecting him to some risk or danger to his personal safety and compelling him to leave the train while it was in motion, however slow the speed of the train was diminished at that point, the defendant was guilty of the violation of a duty it owed to the plaintiff. Its negligence thus committed must be held to have been the proximate cause of the plaintiff's injuries, unless it could be held, upon a view of the evidence, as a matter of law, that the plaintiff was guilty of contributory negligence, without which the damage would not have occurred, and, we do not think we can justly so hold. Our opinion is rather that, upon the evidence, the question whether the plaintiff was guilty of such contributory negligence as would exonerate the defendant from culpable blame for the accident and the injuries received by the plaintiff as a result thereof was one for the court to solve.

It is obviously true, as is said by the supreme court, in *Loftus* v. *Pacific Elec. Co.*, 166 Cal. 464, 467, [137 Pac. 34], that "ordinarily, the question whether a plaintiff has been guilty of contributory negligence is one of fact for the jury. It becomes a question of law for the decision of the court only where the facts are undisputed, and even then only where, on those facts, reasonable minds can draw but one conclusion on the issue of contributory negligence. (*Herbert* v. *Southern Pacific R. R. Co.*, 121 Cal. 227, [53 Pac. 651]; *Johnson* v. *Southern Pac. R. R. Co.*, 154 Cal. 285, [97 Pac. 520]; *Hoff* v. *Los Angeles R. Co.*, 158 Cal. 597, [112 Pac. 53]; *Zibbell* v. *Southern Pacific*, 160 Cal. 237, [116 Pac. 513].) 'It has often been said by this court that it is very rare that a set of circumstances is presented which enables a court to say, as a matter of law, that negligence has been shown. As a general rule, it is a question of fact for the jury. . . . ' (*Seller* v. *Market St. Ry. Co.*, 139 Cal. 268, [72 Pac. 1006].) " [3] And where contributory negligence is set up as a defense to an action for damages for personal injuries received through the alleged negligence of the defendant the burden is upon the latter to prove such defense.

In this case, while the conductor and the brakeman, testifying for the defendant, gave an entirely different version

of the matter from that of the plaintiff, saying that neither ordered the plaintiff to jump from the train while it was in motion and that it was the intention to stop the train so that he (plaintiff) could alight therefrom in the usual way, this court must be guided solely in determining the question of the alleged contributory negligence of the plaintiff by the latter's testimony, it having been accepted by the trial court, to which the determination of the question of fact was submitted, as involving a truthful narrative of the circumstances under which he came to jump from the train while it was in motion.

[4] Modern authority does not sanction the proposition that it is negligence *per se* on the part of a passenger to alight from a moving train, the true doctrine being that, whether one alighting from a running train and thereby receiving personal injuries is guilty of contributory negligence is a question which must be determined from all the circumstances and conditions surrounding the passenger immediately prior to the injury. (*Carr* v. *Eel River etc. R. R. Co.*, 98 Cal. 366, 372, 373, [21 L. R. A. 354, 33 Pac. 213].) In the case just named the supreme court said: "That there was more hazard in leaving a car while in motion, although moving ever so slowly, than when it is at rest, is self-evident; but whether it is imprudent and careless to make the attempt depends upon circumstances; and where a party by the wrongful act of another has been placed in circumstances calling for an election between leaving the cars or submitting to an inconvenience, and a further wrong, it is a proper question for a jury, whether it was a prudent and ordinarily careful act, or whether it was a rash and reckless exposure of the person to peril and hazard."

In 10 Corpus Juris, page 1131, section 1504, it is said, after a review of many authorities: "A passenger is not guilty of negligence *per se* in jumping from a moving train or car by the advice, direction, invitation, or order of the conductor or other authorized employee of the carrier, on whose opinion or judgment in the matter he has a right to rely, if the danger of such an act would not be apparent to a prudent man, as where the train at the time is moving slowly, and in such case it becomes the province of the jury to say how far the passenger's act may be excused, and

whether or not it was negligent." (See, also, *Filer* v. *New York Cent. Ry. Co.*, 49 N. Y. 47, [10 Am. Rep. 327].)

[5] In this case the testimony shows that the train had slowed down to a rate of speed which would enable the average person of ordinary alertness to alight from it with safety. Hurtzig, before the plaintiff leaped from the train, had stepped to the ground from the train in safety. The testimony further shows that the plaintiff himself, under like circumstances and in the night-time, had on several previous occasions alighted from the same train while it was in motion. On these occasions, it is true, as the testimony shows, either the brakeman or conductor first alighted and held up a lighted lantern in such manner as to enable the plaintiff to see that he would or might not, in jumping, strike some object on the ground which might cause him to receive personal injuries, while on the occasion in question the conductor and the brakeman failed to provide him with any such assistance, which was, as a matter of fact, negligence on their part. It is thus very clear that there was no obvious danger in the act of the defendant in leaping from the train. In other words, it is manifest that the act of the plaintiff in jumping from the train, under the indicated circumstances, did not involve such an act of imprudence or carelessness as to justify the declaration that it amounted to negligence *per se* or as a matter of law.

But there is still another consideration in the evidential features of the case which possesses much significance in the determination of the question whether the plaintiff's act in leaping from the train did or did not constitute negligence *per se.*

The plaintiff, as his testimony shows, had gone to Redding for a few days' "lay-off" from his customary employment or labor. He received a telegram immediately after his arrival at Redding and on the day of his arrival there, urging him to return to Lamoine immediately or "at once" to attend (as we may infer from the telegram) to the correction of certain alleged mistakes in a bill or an account with which he was concerned. The telegram, it will be noticed, stated that the sender could not "wait longer"—that is, as we may also infer, that it was urgent that the mistakes should be corrected at the earliest possible moment and that the

plaintiff should be present to correct them. The importance, in his mind, of the immediate return to Lamoine is evidenced by the fact that he immediately, upon receiving the telegram, arranged to return as soon as he could conveniently do so—that is, on the first train leaving and going in the direction of Lamoine after the receipt of the message—and that in so returning he was ready and willing to forego the "lay-off" or rest to secure which was his purpose in going to Redding. The trainmen had told him that the train would not stop at Lemoine, and in fact it did not come to a stop when it reached that station, and, having been ordered several times by the trainmen to jump to the ground, there was but one of two things he could do, viz., either go on with the train beyond the point of his destination and so fail promptly to meet the engagement which it clearly appeared it was in his mind necessary and urgent to meet with haste and promptness, or take the chances of leaping with safety to himself from the steps of the car in which he was riding. Moreover, it appears that, as he was considering whether he had better attempt to alight from the train by leaping or jumping, the bell-cord was pulled by one of the trainmen and, he testified, he interpreted that act as a signal to the engineer to increase the speed of the train. [6] Thus it is plain that the plaintiff found himself suddenly placed in a position where he was compelled to decide in an instant of time which of the two alternatives which were open or available to him he should choose—that is, whether he should attempt to alight from the train while it was in motion and before its speed was increased or go on to the next station some distance from Lamoine. The position in which plaintiff was thus put was the result of the defendant's own wrongful act or tort; and it was, indeed, a difficult position in which the plaintiff found himself under the circumstances, and one which naturally was calculated to deprive him of his self-possession or that cool and calm judgment which alone admits of deliberation and prudence before selecting one of two alternative courses, one of which might in his mind entail upon him an inconvenience in a business transaction or matter of great significance or importance to him and the other attended by more or less risk of sustaining personal injury. In such circum-

stances a person is not to be expected to act with the highest degree of prudence, and if it happened that he has not exercised the best judgment or that degree of prudence which he would have shown under ordinary circumstances, particularly where his position has been brought about by the negligent or wrongful act of the defendant himself, he should not be held to have been guilty of such negligence as would preclude him from a recovery for such negligent or wrongful conduct of the defendant, where physical or other injury has resulted to him from the course he has, under such circumstances, elected to adopt. The rule as thus stated is well explained and aptly applied in *Lawrence* v. *Green,* 70 Cal. 417, [59 Am. Rep. 428, 11 Pac. 750]. Also, what is said by the supreme court of Kansas in *Walters* v. *Missouri Pac. Ry. Co.,* 82 Kan. 739, [28 L. R. A. (N. S.) 1058, 109 Pac. 173, 175], has cogent pertinency to the case here and is particularly illuminating upon the point now under consideration. (See, also, *Kansas City etc. Co.* v. *Worthington,* 101 Ark. 128, [141 S. W. 1173].)

But appellant emphasizes the proposition that the plaintiff, on cross-examination, admitted that, having observed Hurtzig alight from the train with safety, thought he could do likewise, and that he was governed more or less in his act in leaping to the ground by the successful performance of Hurtzig in that respect. In the first place, it is to be observed that the admissions of the plaintiff thus referred to on his cross-examination were somewhat at variance with his testimony given on his direct examination, and such inconsistencies in the testimony of a witness can go no further than to impair his credibility as a witness or reduce the weight of his testimony, and it is solely the function of the trier of the facts to say whether they have such an effect or may be rationally reconciled with the theory that the witness, in his testimony in chief, has told the truth.

[7] "In passing on the legal effect of plaintiff's evidence, the examinations in chief are not to be detached from the cross-examinations" (*Masten* v. *Griffing,* 33 Cal. 111), and it may be added that in passing upon the testimony of a witness elicited on cross-examination, such testimony is not to be detached from his examination in chief or considered without reference to the latter. In other words, the testi-

mony of the witness must be considered in its entirety to determine the weight to which it is entitled. As is said in *Firth* v. *Southern Pac. Co.*, 44 Cal. App. 511, [186 Pac. 815], it is for the court or the jury to determine how far, if at all, inconsistencies in the testimony of a witness go toward weakening such testimony or in impairing the credibility of the witness. In the second place, it is to be remarked that the mere fact that a person precedes another in jumping off a moving train does not stamp the act of the latter, if he happens to sustain injury by reason of his act of so jumping, as negligence *per se*, or is such an act as would justify this court in this case, when considering all its circumstances, in holding as a matter of law that the plaintiff was guilty of contributory negligence. (*Filer* v. *New York Cent. Ry. Co.*, 49 N. Y. 47, [10 Am. Rep. 327]; *Trinity Valley etc. Co.* v. *Green* (Tex. Civ. App.), 154 S. W. 278.) Of course, if the plaintiff had voluntarily, and without being urged to do so by the trainmen, jumped from the train, a different situation would be presented, but, as we have shown, he was not only repeatedly told by the trainmen to leap from the train while it was in motion, but it was undoubtedly very plain to him that he would have to leave the train while it was moving or be taken some distance beyond his point of destination.

From all the foregoing considerations, it is obvious that it cannot justly be held, as a matter of law, that the plaintiff was guilty of contributory negligence. As stated, that question, upon the evidence presented, was one for the court, as the selected arbiter of the facts, to determine.

The judgment is affirmed.

Nicol, P. J., *pro tem.*, and Burnett, J., concurred.